1  JAMES ATTRIDGE [SBN NO. 124003]
   Business Trial Lawyer
2  The Fox Plaza, Suite 1204
   1390 Market Street
3  San Francisco, CA  94102
   Telephone:     (415) 552-3088
4
   Attorney for Plaintiff
5  ONEBEACON INSURANCE COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  ONEBEACON INSURANCE COMPANY,        Case No:  C-07-3540 BZ (MEJ)

12          Plaintiff(s),              **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
13      v.                             PLAINTIFF'S MOTION FOR SUMMARY
                                        JUDGMENT OR, IN THE ALTERNATIVE,
14  HAAS INDUSTRIES, INC.,             FOR PARTIAL SUMMARY JUDGMENT**

15          Defendant(s).

16                                     Date:          April 2, 2008
                                       Time:          10:00 a.m.
17                                     Courtroom:      Courtroom G

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                                    **Page**

3

TABLE OF AUTHORITIES ................................................................................................ II

I.      INTRODUCTION................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 1

III.    ARGUMENT ...................................................................................................... 3

IV.     CONCLUSION ................................................................................................. 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR. IN THE ALTERNATIVE. FOR PARTIAL SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*American National Fire Insurance v. Yellow Freight System,*
   325 F.3d 924 (7th Cir. 2003) .......................................................................... 10

5

6

*Atlantic Mutual Insurance v. Yasutami Warehousing,*
   326 F.Supp.2d 1123 (C.D. Cal. 2004) ........................................................ 6, 7

7

*Banos v. Eckerd Corp.,*
   997 F.Supp. 756 (E.D. La. 1988) .................................................................... 3

8

9

*Diero v. American Airlines,*
   816 F.2d 1360 (9th Cir. 1987) .......................................................................... 4

10

*Emerson Electric Supply v. Estes Express Lines,*
   451 F.3d 179 (3rd Cir. 2006) ............................................................................ 6

11

12

*Hath v. Alleghany Color Corp.,*
   369 F.Supp.2d 1116 (D. Az. 2005) .................................................................. 7

13

*Hudson Transit Lines, Inc. v. United States,*
   562 F.2d 174 (2nd Cir. 1977) ........................................................................... 8

14

15

*Hughes Aircraft v. North American Van Lines,*
   970 F.2d 609 (9th Cir. 1992) ............................................................................ 5

16

*International Detective Service, Inc. v. ICC,*
   595 F.2d 862 (D.C. Cir. 1979) ........................................................................ 8

17

18

*J. Aron & Co. v. Cargill Marine Terminal, Inc.,*
   998 F.Supp.700 (E.D. La. 1998) ..................................................................... 8

19

*Kaisha v. Burlington and Northern Santa Fe Railway,*
   367 F.Supp. 1292 (C.D. Cal. 2005) ................................................................ 5

20

21

*Kesal v. United Parcel Service, Inc.,*
   339 F.3d 849 (9th Cir. 2003) ............................................................................ 6

22

*Mercer Transportation v. Greentree Transportation Co.,*
   341 F.3d 1192 (10th Cir. 2003) ....................................................................... 4

23

24

*Missouri Pacific Railroad v. Elmore & Stahl,*
   377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964) ................................... 9

25

*New York, New Haven and Hartford R.R. v. Nothnagel,*
   346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) ....................................... 5

26

27

*Sasinowski v. Boston M.R.R.,*
   74 F.2d 628 (1st Cir. 1935) .............................................................................. 8

28

*Sassy Doll Creations v. Watkins Motors Lines,*

1   331 F.3d 834 (11th Cir. 2003) .................................................................. 6

2 *Shielding International v. Oak Harbor Freight Lines,*
   442 F.Supp.2d 1092 (D. Or. 2006) ........................................................ 7
3

4 *Sompo Japan Insurance v. Union Pacific,*
   456 F.3d 54 (2nd Cir. 2006) ................................................................. 5

5 *Spray-Tek, Inc. v. Robbins Motor Transp., Inc.,*
   426 F.Supp.2d 875, 882 (W.D. Wis. 2006) ......................................... 3
6

7 *T.J. Stevenson & Co. Inc. v. 81,193 Bags of Flour,*
   629 F.2d 338 (5th Cir. 1980) ............................................................... 8

8 *Temple Steel Co. v. Landstar Inway,*
   211 F.3d 1029 (7th Cir. 2000) ............................................................. 4
9

10 *U.S. Code and Administrative News,*
   104th Cong. 1st Sess. p. 900 (1995) .................................................... 9

11 *Wallis v. Princess Cruises Inc.,*
   306 F.3d 827 (9th Cir. 2002) ............................................................... 8
12

### STATUTES
13

14 46 U.S.C. 1304(5) ........................................................................................ 4

15 49 U.S.C. 10730 ........................................................................................... 4

16 49 U.S.C. 13102(4)(b) .................................................................................. 9

17 49 U.S.C. 14101(b) ................................................................................... 1, 9

18 49 U.S.C. 14706 ....................................................................................... 3, 5

19 49 U.S.C. 14706(a) ...................................................................................... 3

20 49 U.S.C. 14706(a)(1) ................................................................................. 4

21 49 U.S.C. 14706(c)(1) .............................................................................. 4, 5

22 49 U.S.C. 14706(c)(1)(a) ............................................................................ 8

23 49 U.S.C. 14706(c)(1)(B) ........................................................................ 5, 7

24 49 U.S.C. 40105 ........................................................................................... 4

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

1    **I.    INTRODUCTION**

2          This is a Carmack amendment case seeking recovery for cargo lost in transit on its way

3    from San Jose to New York in July, 2005.  Plaintiff assumes that liability is not contested and

4    that the only genuine issue in the case is whether or not the defendant's liability was limited to

5    $50 or $0.50 per pound as alleged in the Sixteenth Affirmative Defense.

6          Therefore, plaintiff moves for summary judgment.  Should the defendant convince the

7    Court that the defeat of that defense leaves other issues for it to fight another day, then plaintiff

8    seeks partial summary judgment of the Sixteenth Affirmative Defense only.

9          That defense alleges that the defendant's liability is limited to $50 or $0.50 per pound by

10   the shipping documents.  This affirmative defense fails because the defendant (1) did not offer

11   either a choice of rates or a rate under which the freight would travel at full liability, (2) because

12   the liability limit is facially unreasonable, and (3) because as a contract carrier the defendant

13   could only limit its liability by special contract, which it did not.

14   **II.    STATEMENT OF FACTS**

15         Plaintiff OneBeacon is the subrogated insurer of Professional Products, Inc. ("PPI").

16   Defendant Haas is a motor carrier with a contract carrier permit issued by the United States

17   Department of Transportation.  It does not have common carrier authority.  In June 2005, PPI

18   purchased a quantity of high tech equipment from Omneon Video Networks of Sunnyvale,

19   California ("Omneon").  The equipment was consigned to the City University of New York.  The

20   terms of sale were FOB Omneon's dock in Sunnyvale.  (Turk Dec. para. 3.)

21         On June 30, 2005, Haas accepted the shipment and issued a bill of lading.  (Answer para.

22   6, Exhibit 1, p. 018).  There was no contract carriage agreement in place as provided for in 49

23   U.S.C. 14101(b)[1].  The shipment consisted of 3 pallets with 8 boxes.  (*Id.*)  The bill of lading

24   issued by Haas provided for 3-5 day delivery (*Id.*) which because of the July 4 holiday, meant

25   that the shipment had to be delivered in 4 days.

26   _____

27   [1] In paragraph 7 of the Answer, Haas denied on information and belief that Haas had not entered
into a contract carrier agreement with either Omneon or Professional Products, Inc. as defined in

28   49 U.S.C. 41101(b).  However, it did not provide one in its initial disclosures.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT

1    On July 1, 2005, Haas consolidated the Omneon shipment with three others of unknown
2    origin and tendered them to Direct Air Service, Inc. a domestic airfreight carrier not subject to
3    the Carmack amendment.  Direct Air issued an Airbill which described Haas as the shipper at
4    SFO.  (Exhibit 1, p. 03).  (Answer para. 8)
5    The Haas bill of lading Terms and Conditions of Contract on its reverse contain the
6    following paragraphs:
7    1.    **Non-Negotiable Document**:  In tendering the shipment described herein for
8    carriage shipper agrees to these conditions of contract, **which no agent or employee of the**
9    **parties may alter** and that this **Airbill** is non-negotiable, and has been prepaid by him or on his
10   behalf by the carrier.
11   2.    **Carrier Tariffs Govern**:  It is mutually agreed that the shipment described herein
12   accepted on the date hereof … **subject to governing tariffs** in effect as of the date hereof … and
13   are hereby incorporated into and made part of this contract.
14   3.    Liability Limits:  Declared value is agreed and understood to be not more than
15   50¢ per pound or $50.00 whichever is lesser, unless a higher value is declared herein **and**
16   **applicable charges paid thereon …**
17   Haas also posts something called "Conditions of Contract of Carriage" on its website,
18   (Ex. 1, p. 05-010) but neither that document, nor the website itself are referenced anywhere on
19   the bill of lading.  Paragraph 8 of that document also states the 50¢/$50.00 limitation of liability,
20   and that "Declared values for carriage in excess of $0.50 per pound, per piece, shall be subject to
21   **an excess valuation charge.**"  It also says "**this limitation is subject to provisions as**
22   **published in Haas Industries governing tariffs.**"  (Ex. 1, p. 06)
23   So, where do you find the tariff provisions addressing the limitation of liability?  The
24   same place you go to figure out what the excess valuation charge would be.  NOWHERE.
25   THERE ARE NONE!
26   On March 18, 2006, OneBeacon's counsel made a demand on Haas requesting "a copy of
27   the pertinent items from the governing tariff which were in effect on June 30, 2005 which outline
28   the range of choices available to the shipper."  (Ex. 1, p. 023.)  That request was reiterated to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

1    counsel for Haas on April 17, 2006.  (Attridge Dec., para. 5).  The only "tariffs" allegedly extant

2    are pages 01 and 02 of Exhibit 1, neither of which makes any reference to excess valuation

3    charges.  On June 30, 2005, there was no menu of options and most importantly, no reference to

4    what the freight charge would be if the carrier's liability was for the full actual value of the

5    freight, which is the recovery the Carmack amendment <u>mandates</u>.  49 U.S.C. 14706.[2]

6         Omneon's trace notes indicate that someone named Mike at Direct Air admitted that the

7    shipment was one pallet short.  (Ex. 1, p. 019)  The delivery receipt contains the notation

8    "incomplete delivery" and that "1 pallet w/ 2 boxes to be located @ airport by 7/11/05."  (Ex. 1,

9    p. 018)  It wasn't.

10        PPI filed a claim with its insurer, OneBeacon, which upon investigation and the

11   submission of a sworn statement in proof of loss paid the insured $104,617.00.  (Coolidge Dec.,

12   para. 4)

13   **III.    ARGUMENT**

14        **1.    Overview Of Limitations Of Liability and The Carmack Amendment**

15        This is a Carmack amendment case.  The Carmack amendment provides that motor

16   carriers and freight forwarders carrying goods in interstate commerce shall issue a receipt <u>or</u> bill

17   of lading and that the receiving carrier is liable to the person entitled to recover.  49 U.S.C.

18   14706(a).  Among those entitled to recover is the owner of the freight.  *Spray-Tek, Inc. v.*

19   *Robbins Motor Transp., Inc.*, 426 F.Supp.2d 875, 882 (W.D. Wis. 2006); *Banos v. Eckerd Corp.*,

20   997 F.Supp. 756, 762 (E.D. La. 1988)  In this instance, that was PPI, plaintiff's insured.

21        The purpose of permitting the plaintiff to seek recovery from the original carrier is to

22   enable the shipper to seek recovery without having to determine which carrier in the chain

23   actually caused the damage.  Should the real culprit be a downstream carrier, the originating

24   carrier is then entitled to seek indemnity from it.  The Carmack amendment is a faustian bargain

25   between a carrier and its customer.  In exchange for a modified strict liability regime requiring

---

[2] In paragraph 9 of the Answer, Haas denies that its tariff does not contain a menu of options
permitting shippers to choose between a variety of freight rates tied to different levels of liability,
but the tariffs it provided in its disclosures contain no such thing.

---

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR. IN THE ALTERNATIVE. FOR PARTIAL SUMMARY JUDGMENT

1    only a *prima facie* showing of tender in good condition and damage at delivery, the plaintiff is

2    entitled to no more than the actual loss or injury to the property. 49 U.S.C. 14706(a)(1). The

3    carrier is also entitled to recognized affirmative defenses. *Mercer Transportation v. Greentree*

4    *Transportation Co.*, 341 F.3d 1192, 1196-1197 (10th Cir. 2003); *Temple Steel Co. v. Landstar*

5    *Inway*, 211 F.3d 1029, 1030 (7th Cir. 2000).

6         Before getting into the nature of limitations of liability, plaintiff wishes to underscore that

7    this case involves an alleged limitation of liability governed by Carmack. A crazy quilt of

8    liability regimes abound in transportation. The liability of ocean carriers is limited by statute to

9    $500 per shipping unit. 46 U.S.C. 1304(5). The liability of international air carriers is limited by

10    treaty to the sum of $9.07 per pound. 49 U.S.C. 40105. Domestic air freight is governed by

11    federal common law. *Diero v. American Airlines*, 816 F.2d 1360, 1365 (9th Cir. 1987).

12    Authorities arising in these different contexts are instructive only in varying degrees, running

13    from close to no cigar, and should be viewed with a skeptical eye. In particular, with regards to

14    limitations of liability, it must be underscored that the underlying purposes of laws governing air

15    freight or surface freight are exact opposites. The Interstate Commerce Act of 1887 and the

16    Hepburn Act of 1906, to which the Carmack amendment was appended, were enacted to reign in

17    the discriminatory and predatory pricing practices of a mature, monopolistic business. The Air

18    Commerce Act of 1938 was designed to foster the growth of a nascent industry still considered

19    by many to be dangerous and risky. Thus, Congress, and later the erstwhile Civil Aeronautics

20    Board, ordained a liability scheme which shifted the risk of loss to the shipper who became

21    responsible for its own insurance.

22         At bottom, the difference is this: in air freight, the limitation of liability pre-exists and is

23    low and the shipper pays a higher rate in exchange for higher carrier exposure. Under Carmack

24    the burden of full liability is the norm and the shipper can opt for limited carrier exposure in

25    exchange for a discount.

26         With the passage of the Cummins amendment in 1915, Carmack has always contained a

27    mechanism by which a shipper can agree to a limitation of liability below actual value in

28    exchange for a discounted freight rate. 49 U.S.C. 14706(c)(1); formerly 49 U.S.C. 10730.

1    However, it has always been the rule and remains the rule that:

2              A carrier wishing to limit its liability pursuant to 49 U.S.C.
         14706(c)(1) must offer the shipper the option of full Carmack
3        coverage <u>which includes both</u> the Carmack version of strict
         liability and full coverage for loss.
4

5    *Sompo Japan Insurance v. Union Pacific*, 456 F.3d 54, 60 (2nd Cir. 2006); *accord: Kaisha v.*

6    *Burlington and Northern Santa Fe Railway*, 367 F.Supp. 1292, 1297 (C.D. Cal. 2005).[3]

7              Beginning with *New York, New Haven and Hartford R.R. v. Nothnagel*, 346 U.S. 128, 73

8    S.Ct. 986, 97 L.Ed. 1500 (1953) the Courts prescribed a rigid four part test required of every

9    Carmack carrier seeking to assert a limitation of liability.  The most recent Ninth Circuit version

10   of the test is:

11             Before a carrier's attempt to limit its liability will be effective, the
         carrier must (1) maintain a tariff in compliance with the
12       requirements of the Interstate Commerce Commission; (2) give the
         shipper a reasonable opportunity to choose between <u>two or more</u>
13       levels of liability; (3) obtain the shipper's agreements to his choice
         of carrier liability limit; and (4) issue a bill of lading prior to
14       moving the shipment that reflects any such agreement.  The carrier
         has the burden of proving that it has complied with these
15       requirements.

16   *Hughes Aircraft v. North American Van Lines*, 970 F.2d 609, 611-612 (9th Cir. 1992).

17             ICCTA eliminated the tariff filing requirement which altered the nature of the first prong

18   of the test.  It also robbed carriers of the luxury of asserting that shippers were on constructive

19   notice of carrier tariffs because they were on file with the government.  Now under 49 U.S.C.

20   14706 carriers may maintain what are called "private tariffs" consisting of:

21             The rate, classification, rules, and practices upon which any rate
         applicable to a shipment, or agreed to between the shipper and the
22       carrier is based.

23   49 U.S.C. 14706(c)(1)(B).  The carrier must provide a copy if the shipper requests it.  *Id.*

24             The Ninth Circuit has yet to render a decision interpreting limitations of liability under

25   _____

26   [3] The Carmack amendment has always applied to both railroads and motor carriers.  See: former
     49 U.S.C. 20(11) and former 49 U.S.C. 11707.  Because the ICC Termination Act ("ICCTA")
27   Pub Law 104-88 (1995) left railroads subject to greater administrative regulation than motor
     carriers the amendment was recodified and split with nearly identical language now found at 49
28   U.S.C. 14706 (motor carriers) and 49 U.S.C. 11706 (rail).

                                              5
     ─────────────────────────────────────────────────────────────────
          MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
              SUMMARY JUDGMENT OR. IN THE ALTERNATIVE. FOR PARTIAL SUMMARY JUDGMENT

1  Carmack after ICCTA.  However, in the context of airfreight which is subject to a less rigid

2  standard, it has said:

3          UPS can limit its liability to $558 only if it provided Kesal with (1)
           reasonable notice of limited liability; and (2) a fair opportunity to
4          purchase higher liability.

5  *Kesal v. United Parcel Service, Inc.*, 339 F.3d 849 (9th Cir. 2003)[4]

6          In *Emerson Electric Supply v. Estes Express Lines*, 451 F.3d 179 (3rd Cir. 2006), the

7  Third Circuit rejected the argument that ICCTA had diluted Carmack to a regime akin to

8  domestic airfreight.  The carrier in that case relied upon the fact it featured a declared value box

9  on its bill of lading and had a take it or leave it dollar value in its tariff.  (Unlike Haas, Estes

10 actually <u>had</u> a tariff.)  The capstone of the decision rejecting the limitation was the carrier's

11 failure to offer alternative rates:

12         The ICCTA's legislative history does not reveal a Congressional
           intent to alter the two or more levels of liability requirement.
13         Because the ICCTA and its legislative history do not express an
           intent to alter the two or more levels of liability requirement, we
14         hold that a carrier must continue to offer two or more rates with
           corresponding levels of liability pursuant to the Carmack
15         amendment.

16 *Id.* at p. 187.

17         An almost identical finding was made by the Eleventh Circuit in *Sassy Doll Creations v.*

18 *Watkins Motors Lines*, 331 F.3d 834, 841-842 (11th Cir. 2003).[5]

19         Three district court opinions within the Ninth Circuit are instructive.  In *Atlantic Mutual*

20 *Insurance v. Yasutami Warehousing*, 326 F.Supp.2d 1123 (C.D. Cal. 2004) the court upheld a

21 limitation of liability because the face of the bill of lading stated what the additional charges

22 would be: "Excess valuation charges will be 10 cents per $100.00 valuation."  *Id.* at p. 1124.  It

23 would not have been difficult for Haas to pre-print just such an advisement on its bill of lading if

24 it was making an effort to provide its customers with a reasonable opportunity to make a choice.

25

26 [4] The facts in *Kesal* indicate that the terms of the limitation of liability were put squarely before
27 the plaintiff's representative and that he knowingly, if grudgingly, accepted them. *Id.* at p. 851.

28 [5] Judge Brunetti sitting by designation joined in the opinion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

1   Haas did not.

2       In *Hath v. Alleghany Color Corp.*, 369 F.Supp.2d 1116 (D. Az. 2005) the limitation was

3   upheld because the carrier provided a copy of the tariff to the shipper and the shipper actually

4   haggled over the price, at one point objecting to the limitation of liability to which the later

5   agreed.  Again, what stopped Haas from demonstrating the same transparency?

6       In *Shielding International v. Oak Harbor Freight Lines*, 442 F.Supp.2d 1092 (D. Or.

7   2006) the defendant, who, unlike Haas, actually had a tariff, did not provide the shipper with an

8   opportunity to choose between different liability levels, and its limitation of liability defense was

9   rejected.

10      **2.      Haas Does Not Remotely Satisfy The Modified Four Part Test Necessary To**
            **Establish A Limitation of Liability.**

11

12      Right off the bat, Haas does not maintain a tariff at all.  Exhibit 1, page 01, is a scant rate

13  sheet that does not approximate what is anticipated by 49 U.S.C. 14706(c)(1)(B).  Exhibit 1,

14  page 02 is limited to trade show traffic from Omneon.  Given that this case has nothing to do

15  with a trade show sale it's a mystery why it was ever disclosed.  Haas cannot argue that its

16  "Conditions of Contract of Carriage" Exhibit 1, page 05-010 constitutes a tariff because it

17  professes itself to be subject to "Haas Industries governing tariff."

18      Haas has prepared a set of shipping documents subsumed within its governing tariffs, but

19  has not prepared the tariffs themselves.  It is like baking a pie without filling.

20      Most glaringly, Haas did not provide the shipper an opportunity to choose between levels

21  of liability, including full liability as mandated by Carmack.  Its bill of lading states a limitation

22  of liability at $50 or $0.50 and declares its terms to be "non-negotiable."  It states that a declared

23  value will result in "applicable charges", but there is nothing put to paper which allows any

24  prospective shipper to figure out what those charges might be, as was the case in *Atlantic*

25  *Mutual, supra.*

26      A Hobson's choice is no choice at all.

27      **3.      Haas' Limitation Of Liability Is Violative Of The Prescriptions Of The**
            **Carmack Amendment Which Requires Them To Be Reasonable Under The**
28          **Circumstances**

---

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

1    The limitation of liability provision in Carmack provides:

2          … a carrier … may <u>establish rates</u> for the transportation of
          property limited to a value established by written …agreement
3          between the carrier and shipper <u>if that value would be reasonable</u>
          under the circumstances …
4

5    49 U.S.C. 14706(c)(1)(a)

6          In the context of limitations of liability reasonableness is a question of law to be

7    determined by the court.  *Wallis v. Princess Cruises Inc.*, 306 F.3d 827, 835 (9th Cir. 2002).

8          Haas wants the world to believe that a recovery of less than one penny on the dollar is

9    reasonable under the circumstances.  Enough said.

10         **4.    As A Contract Carrier, Haas Can Limit Its Liability Only By A Stand Alone
                  Bilateral Contract, Not With A One Size Fits All Form**
11

12         As Haas freely admits it is licensed as a contract carrier only and not as a common

13   carrier.

14         Historically, the contrast between the two was quite sharp.  Contract carriers provided

15   their services to a chosen few and entered into special contracts with their shipper, usually to

16   provide unique services regular common carriers were not equipped to provide.[6]

17         Prior to 1980 carriers were not allowed to hold dual authorities and contract carriers were

18   severely constrained.  *See: International Detective Service, Inc. v. ICC*, 595 F.2d 862, 865 (D.C.

19   Cir. 1979); *Hudson Transit Lines, Inc. v. United States*, 562 F.2d 174, 178 (2nd Cir. 1977).  In

20   contract carriage, the separate negotiated contract trumped the bill of lading, which served as a

21   receipt, or when necessary, as a gap filler only.  *T.J. Stevenson & Co. Inc. v. 81,193 Bags of

22   Flour*, 629 F.2d 338, 372 (5th Cir. 1980); *J. Aron & Co. v. Cargirl Marine Terminal, Inc.*, 998

23   F.Supp.700, 704 (E.D. La. 1998).  Many of these shackles were loosed by the Motor Carrier Act

24   of 1980, Pub Law 96-296 (1980) and subsequent regulatory decisions.

25         Currently, the Interstate Commerce Act defines contract carriage as: "service provided

26

27   ───────────────────────────
     [6] For example, some early contract carrier cases involved circus trains, a unique service if there
28   ever was one.  *Sasinowski v. Boston M.R.R.*, 74 F.2d 628, 631 (1st Cir. 1935)

─────────────────────────────────────────────
                                    8
─────────────────────────────────────────────

1 | under an agreement entered into under section 14101(b)."  49 U.S.C. 13102(4)(b).  That section

2 | provides:

> A carrier providing transportation or service …may enter into a
> contract with a shipper … to provide specified services under
> specific rates and conditions.  If the shipper and carrier, in writing,
> expressly waive any or all rights and remedies under this part for
> the transportation covered by the contract, the transportation
> provided under the contract shall not be subject to the waived
> rights and remedies …

7 | 49 U.S.C. 14101(b)

8 | The Congressional intent when enacting 49 U.S.C. 14101(b) is clear:

> (the section) would allow carriers to enter contracts for specific
> shipments under which both parties may waive their rights and
> remedies.

11 | *U.S. Code and Administrative News*, 104th Cong. 1st Sess. p. 900 (1995).

12 | Taken as a whole these provisions mean that a contract carrier can only avoid the actual

13 | value remedy in Carmack by obtaining a specific contract for that specific shipment which

14 | specifically and expressly waives that remedy.

15 | Haas has not.  In fact, at least in this instance, Haas was either a licensed contract carrier

16 | operating without a contract, or on the flip side, a common carrier operating without a license.

17 | **5.    Given That A *Prima Facie* Case Has Been Established, And The Only
Cognizable Affirmative Defense Rendered Ineffective, Summary Judgment
Should Be Granted In Its Entirety.**

18 |

19 | Under the Carmack amendment, the plaintiff only bears the burden of a *prima facie*

20 | showing of (1) delivery to the carrier in good condition, (2) arrival in damaged condition, and (3)

21 | proof of damages.  *Missouri Pacific Railroad v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct.

22 | 1142, 1145, 12 L.Ed.2d 194 (1964).  Haas cannot, with a straight face, deny either criterion of

23 | liability.  It admits that it issued a bill of lading in paragraphs 6 and 8 of its Answer, and cannot

24 | deny that the shipment delivered short in light of its admissions on Exhibit 1, pages 011 and 021.

25 | It cannot be argued in good faith that there is a triable issue as to damages being $104,617.00.

26 | Exhibit 1, page 013, Coolidge Decl., paras 3, 4, Exhibit 4.

27 | Given that the Sixteenth Affirmative Defense has gone by the boards, unless defendant

28 | can make some offer of proof that there is any substance to its other affirmative defenses,

1    judgment should be entered in favor of plaintiff in the amount of $104,617 with prejudgment

2    interest running from the date plaintiff paid its insured. *American National Fire Insurance v.*

3    *Yellow Freight System*, 325 F.3d 924, 935 (7th Cir. 2003).

4    **IV.    CONCLUSION**

5         It is quite apparent from an examination of the documentation that Haas has taken a

6    hodgepodge of shipping documents from disparate modes and cobbled them together into an

7    unenforceable morass. Its bill of lading refers to itself on its back side as an airbill. That is like

8    calling a truck an airplane. It incorporates tariffs that do not exist. It refers to valuation charges,

9    but there is nothing to cross-reference to figure out what they will be.

10        If there is one overarching principle upon which this entire line of law rests, it is that the

11   carrier must dot every i and cross every t to assure that the customer knew what it was getting

12   into. Here, Haas did not even make it through the alphabet.

13        Because the limitation of liability is unenforceable, summary judgment, or at least partial

14   summary judgment should be entered in favor of plaintiff.

15                                    Respectfully submitted

16   DATED:  February 27, 2008            JAMES ATTRIDGE

17

18

19                         By:_____*/s/ James Attridge*_____
                                    JAMES ATTRIDGE
20                                   Attorney for Plaintiff
                                     ONEBEACON INSURANCE COMPANY
21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR. IN THE ALTERNATIVE. FOR PARTIAL SUMMARY JUDGMENT