**COUNTRYMAN & McDANIEL**
MICHAEL S. McDANIEL [State Bar No. 66774]
cargolaw@aol.com
GEOFFREY W. GILL [State Bar No. 163621]
gwg@cargolaw.com
LAX Airport Center, Eleventh Floor
5933 West Century Boulevard
Los Angeles, California 90045
Telephone: (310) 342-6500
Facsimile: (310) 342-6505

Attorneys for defendant
HAAS INDUSTRIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO**

| | |
|---|---|
| ONE BEACON INSURANCE COMPANY, a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HAAS INDUSTRIES, INC., a corporation,<br><br>Defendants. | **CASE NO. 3:07-CV-03540-BZ**<br><br>**OPPOSITION OF HAAS INDUSTRIES, INC. TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56(a)(b)]**<br><br>Date: April 2, 2008<br>Time: 10:00 a.m.<br>Courtroom: Courtroom G |

Plaintiff Onebeacon Insurance Company's ("Onebeacon") motion is premised upon three arguments:

1. That defendant HAAS Industries, Inc. ("HAAS") has failed to satisfy a "modified four part test," allegedly necessary as a precondition to entitlement to limited liability under the Carmack Amendment;

2. That HAAS' limitation, standard within the non-household goods motor carrier industry, is not "reasonable"; and

3. That something other than HAAS' bill of lading contract is necessary for the limitation to prevail.

Consideration of the facts and applicable law establishes that

Onebeacon is batting "zero for three," and that its motion must be denied, with Onebeacon's recovery being no greater than the HAAS' liability limitation. That said, the evidence before the Court also demonstrates there has been a proper accord and satisfaction, pursuant to which HAAS' liability was entirely discharged.

I. THE THREE POINT TEST FOR LIMITATION IS SATISFIED

The "rigid" four part Hughes test relied upon by Onebeacon is superceded by the ICC Termination Act and has been replaced[1] by a three-part requirement that: (1) there be an agreement with the shipper based upon a choice of liability which (2) gives the shipper a reasonable opportunity to choose between or among levels of liability and (3) the motor carrier issues a bill of lading prior to shipment. *Atlantic Mutual Insurance Co. v. Yasutomi Warehousing and Distribution, Inc.*, 326 F.Supp.2nd 1123, 1124 (C.D. Cal. 2004) (citations omitted).

HAAS issued its bill of lading SFO1590479 identifying Omneon as the shipper and "bill to" party, with the freight paid by Omneon. Holster decl. filed concurrently, para. 12. Conspicuously capitalized on the face side of the bill of lading, there appears:

> DECLARED VALUE AGREED AND UNDERSTOOD TO BE NOT MORE THAN $.50 PER POUND, PER PIECE, OR $50.00 WHICHEVER IS HIGHER UNLESS HIGHER VALUE DECLARED AND CHARGES PAID. FREIGHT BILL SUBJECT TO CONDITIONS SET FORTH ON REVERSE SIDE.

[1] The first part of the Hughes test, that there be a filed tariff, remains valid as to household goods motor carriers. However, household goods are not involved in this case - a commercial shipment of "high-tech equipment" is involved. Memorandum in Support, page 1.

An identified "DECLARED VALUE FOR CARRIAGE" box is to the immediate left of the quoted language, and was left blank by Omneon. HAAS' freight bill contains the requisite language informing the shipper Omneon that a choice was available-one of two printed declared values, whichever was higher, or the actual value declared by the shipper in the provided space. This language is prima facie evidence that Omneon was offered a choice between limited liability or the actual value of the goods. *Atlantic Mutual*, at 1126. There can be no credible argument that HAAS' bill of lading is deficient in the limitation related information it communicates. In large capitalized and conspicuously boxed type, the "DECLARED VALUE" is "AGREED AND UNDERSTOOD TO BE NOT MORE THAN $.50 PER POUND, PER PIECE, OR $50.00 WHICHEVER IS HIGHER." By the included term "UNLESS," the shipper is given clear notice that a choice is offered whereby the shipper may avoid the weight or $50 limitation. The shipper may avoid the limitation by filling in the clearly marked box for "DECLARED VALUE FOR CARRIAGE," which is the "HIGHER VALUE DECLARED" and pays a higher charge-$.70 per $100.00 of the value declared. Holster decl., para. 4 and Exhibit "B" thereto.

No value was declared, nor were commensurate freight charges paid. Rather, the shipment was insured by and with Onebeacon against loss or damage.

The second part of the applicable "test" - that a reasonable opportunity is given for a choice to be made between or among liability levels - is to insure that the entity at risk has the opportunity to make an

> informed choice between, on the one hand, shipping at a lower cost with limited liability, and, on the other,

> separately purchasing insurance or shipping at a higher cost without limited liability. Under the federal common law and our [Ninth] Circuit, the function served by notice of limited liability is accomplished if the shipper in fact purchases separate insurance, whether or not such notice is actually given. The decision to insure separately 'in an of itself demonstrates . . . a conscious decision not to opt out of the liability limitation.'

*Read-Rite Corporation v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir. 1999) quoting in part from *Vision Air Flight Service v. M/V National Pride*, 155 F.3d 1165, 1169 (9th Cir. 1998).

The *Read-Rite* Court continued to explain at page 1198 that "[t]he separate purchase of insurance simply cannot be reconciled with a contention that the shipper has been disadvantaged by a lost opportunity to pay the carrier more money in return for greater coverage[,]" asking rhetorically why would one increase ones costs by essentially insuring the cargo twice. Cargo insurance, where the rate may be presumed to factor in subrogation potential in the event of loss or damage, provides the rational for the carrier limiting its liability. No business astute carrier would transport valuable cargo for a minimal freight charge, if any loss had to be compensated by the carrier in full. In footnote 4, the Court recognized that the insurer, Onebeacon here, stands in the shoes of its insured and "cannot argue as if [its insured] did not make the decision to insure separately." Because the lost at issue high-tech equipment had been insured, satisfaction of the second part of the test is re-enforced.

The third and last part of the test also has been satisfied.

HAAS issued its bill of lading before the shipment. Holster decl., paras. 7 and 9.

II. THE TARIFF ARGUMENT IS A RED HERRING

Acknowledged by Onebeacon at page 5 of its Memorandum, ICCTA eliminated, at least for motor carriers in the position of HAAS, the need to file a tariff. Instead, the motor carrier now may maintain a private tariff. 49 U.S.C. sec. 14706(c)(1)(B). Whether the motor carrier must maintain such a formal tariff is merely "implied." Sorkin, Goods In Transit, § 13.04, p. 13-74 (2007). The tariff information is only relevant if requested by the shipper. *Jackson v. Brooke Ledge, Inc.*, 991 F.Supp. 640, 646 (E.D.Ky. 1997) (". . . because the shipper did not request a copy of the rate, classification, rules, and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier as based, [the motor carrier] was not required to supply the same.") Here the shipper, Omneon, never requested the tariff information. Holster decl., para. 3. Therefore, whether or not HAAS had a detailed printable tariff is irrelevant to proper outcome of the motion at issue. In any event, HAAS did have an available "standard tariff." Holster decl., Exhibit "A."

III. THE NINTH CIRCUIT DISTRICT COURT DECISIONS RELIED UPON BY ONEBEACON IN FACT SUPPORT DEFENDANT HAAS' POSITION

The untenability of Onebeacon's position is demonstrated by the three District Court decisions out of the Ninth Circuit and cited by Onebeacon as "instructive." Memorandum, 6. From *Atlantic Mutual Insurance Company v. Yasutomi Warehousing and Distribution, Inc.*,

326 Fed.Supp.2d 1123 (C.D. Cal. 2004), plaintiff stresses that the additional freight charge of "$.10 per $100 valuation," was stated on the bill of lading. However, that extra language had nothing to do with why the Court upheld the limitation. In language similar to that in the case at bar, the *Atlantic* carrier's bill of lading stated: "Unless indicated, the released value is agreed to be $50.00 per shipment or $.50 per L.B. [sic]." This language appeared in the bills of lading for 101 transactions, which constituted a "course of dealing." The *Atlantic* court favorably cited another case in which 47 transactions were deemed a "course of dealing." The linchpin of the *Atlantic* decision was "[a]s long as there is a 'course of dealing,' courts have only required that the bill of lading clearly state the [monetary] limitation and the method for avoiding it." 326 F.Supp.2d at 1127. In the case at bar, there was a "course of dealing"-some 156 shipments prior to the at issue shipment. Holster decl., para. 7. HAAS' bill of lading states the amount of the monetary limitation and that it can be avoided by declaring a higher value and a higher freight is charged. No more is required. The court additionally recognized that the shipper's purchase of cargo insurance "demonstrates that it had notice about the limited liability contained in defendant's bill of lading" and had the requisite informed choice. 326 F.Supp.2d at 1128.

From *Hath v. Alleghany Color Corp.*, 369 F.Supp.2d 1116 (E.D.Az 2005), plaintiff relies upon the fact that "the carrier provided a copy of the tariff to the shipper ... ." Memorandum, 7. However, the *Hath* shipment was household goods as to which the carrier statutorily was required to provide a written tariff. Omneon's shipment was not household goods, so no written tariff was required.

Plaintiff is comparing apples to oranges.

The court in *Shielding International, Inc. v. Oak Harbor Freight Lines, Inc.*, 442 F.Supp.2d 1092 (D.Or. 2006), rejected limitation because the carrier did not provide the shipper with an opportunity to choose between different liability levels. Neither the carrier's bill of lading nor its pricing agreement mentioned any liability limitation. No surprise that nothing placed the shipper on inquiry notice. To the contrary, HAAS' bill of lading explicitly offers a choice between, on the one hand, two levels of limitation and, on the other hand, no limitation upon a declared value and a higher freight charge.

IV. <u>HAAS' LIMITATION IS REASONABLE</u>

Plaintiff attempts to create an issue out of whether "a recovery of less than one penny on the dollar is reasonable . . . ." from plaintiff's choice of words, the issue submitted is whether HAAS' limitation is reasonable as measured against the value of the goods lost. A differential between the value of the goods and limitation does not raise a question of reasonableness in a Carmack case. There is no statutory provision "that the released value must be reasonably related to the actual value of the goods[,]" nor does such a requirement exist under the common law. *America Cyanamid Company v. New Penn Motor Express, Inc.*, 979 F.2d 310, 314 (3rd Cir. 1992). Such a requirement would introduce undesirable uncertainty into a shipper's claim for damages. *Id.* at 314.

Even grossly disproportionate limitations have been enforced in Carmack cases. See *Martino S.A. v. Transgroup Express*, 269 Fed. Supp.2d 448 (S.D.N.Y. 2003) (limitation of $.50 per pound and $.60

per pound enforced as to $3,000,000 painting suffering damage reducing its value by $500,000.00. Partial summary judgment in the respective amount of $149.50 and $179.40.)

IV. PERPETUATION OF A MEANINGLESS DISTINCTION BETWEEN COMMON AND CONTRACT MOTOR CARRIERS IS WITHOUT MERIT

Onebeacon attempts to draw a distinction between common and contract carriers to argue that in order to avoid Carmack's actual value remedy, a carrier such as HAAS must perform pursuant to a specific contract for the specific shipment and the shipper must expressly waive the Carmack remedy. This position is without citation to any legal authority whatsoever and attempts to revive a distinction laid to rest by the ICCTA. The ICCTA merged the historical separation between common and contract carriers into one "motor carrier" classification such that "registered motor carriers must provide common carriage services and may provide contract carriage services." *M. Fortunoff of Westbury Corp. v. Peerless Insurance Company*, 432 F.3d 127, 132-3 (2nd Cir. 2005). The only distinction between the two has been that common carriers must carry cargo liability insurance while contract carriers need not, so otherwise the distinction between common contract carriers no longer is meaningful. 432 F.3d at 136 (". . . in enacting the ICCTA, Congress envisioned the elimination of separate categories for motor carriers.")

Onebeacon's attempted perpetuation for the purposes of its argument of a now meaningless distinction is entirely without merit.

///

V. <u>THE CLAIM IS EXTINGUISHED BY ACCORD AND SATISFACTION</u>

In any event, Onebeacon's claim has been long settled through an accord and satisfaction, as raised in HAAS' Fifteenth Affirmative defense: "Onebeacon's complaint is barred in whole or in part by the doctrine of accord and satisfaction." By letter dated November 21, 2005, HAAS' check in the sum of $88.00 was tendered to Omneon. Omneon cashed the check and presumably retained the proceeds. Holster decl., para 12, and Exhibits "H" and "I."

California provides for accord and satisfaction through Cal. U.Com.Code section 3311(b), which states that a claim is discharged if "the instrument or an accompanying written communication contain[s] a conspicuous statement to the effect that the instrument [is] tendered as full satisfaction of the claim." Here the accompanying Holster letter conspicuously states that the tendered check "represents [HAAS] maximum liability for this claim[,]" and further states that the tender is "settlement" based upon the weight of the missing goods. Omneon was the shipper, paid the freight and presented the claim. Omneon was the proper party with whom to negotiate the accord and satisfaction.

The defense of accord and satisfaction is appropriate in a Carmack case. On point is *AXA S.A. v. Union Pacific Railroad Company*, 269 F.Supp.2d 863 (S.D.Tx. 2003). In *AXA*, a Carmack shipment sustained damage of $224,371.00 while in transit. Defendant UP tendered its check in the sum of $50,000.00, UP's alleged maximum liability. Claimant plaintiff accepted and cashed UP's check, notwithstanding which continued its claim for the full amount of the loss. Relying upon Texas Bus. and Comm. Code sec. 3.311, a statute with exactly the same relevant language as the

California statute, the Court held that the defense of accord and satisfaction had been established. As with Ms. Holster's letter, UP's letter accompanying the check stated that the claim had been accepted for payment, with the check constituting the limit of UP's liability. As to UP's language constituting the statutory requirement of "a conspicuous statement to the effect that the instrument [is] tendered in full satisfaction of the claim[,]" the court recognized that "the only reasonable interpretation of the statement is that the check was offered in full settlement of the disputed claim." 269 F.Supp.2d at 866. The Court concluded that "accord and satisfaction is a permissible defense to the Carmack Amendment claim." 269 F.Supp.2d at 865.

VI. CONCLUSION

Onebeacon's motion should be DENIED. Onebeacon's claim has been extinguished by an accord and satisfaction.

Dated: March 12, 2008

**COUNTRYMAN & McDANIEL**
MICHAEL S. McDANIEL
GEOFFREY W. GILL

By: [signature]
GEOFFREY W. GILL
Attorneys for defendant
HAAS INDUSTRIES, INC.