1  JAMES ATTRIDGE [SBN NO. 124003]
   Business Trial Lawyer
2  The Fox Plaza, Suite 1204
   1390 Market Street
3  San Francisco, CA 94102
   Telephone:    (415) 552-3088
4
   Attorney for Plaintiff
5  ONEBEACON INSURANCE COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11 ONEBEACON INSURANCE COMPANY,         Case No: C-07-3540 BZ (MEJ)

12         Plaintiff(s),                **REPLY TO OPPOSITION TO
                                        PLAINTIFF'S MOTION FOR SUMMARY
13      v.                              JUDGMENT OR, IN THE ALTERNATIVE,
                                        FOR PARTIAL SUMMARY JUDGMENT**
14 HAAS INDUSTRIES, INC.,

15         Defendant(s).                Date:      April 2, 2008
                                        Time:      10:00 a.m.
16                                      Courtroom: Courtroom G

17

18

19

20

21

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT ................................................................................................................2

    A. There Is No Three Part Test; It Is Still A Four Part Test And Haas Cannot Satisfy It. ...........................................................................................................2

    B. The Fact That PPI's Loss Was Covered By OneBeacon Does Not Trigger Application Of The Liability Limitation ........................................................2

    C. Haas' Course Of Dealing Argument Is A Non-Sequitur ..................................4

    D. There Is No Reason For The Court To Conclude That The Fifty Cent Limitation Of Liability Is Anything But Unreasonable ....................................5

    E. Haas Completely Mischaracterizes The Effect ICTTA Has On The Distinction Between Common And Contract Carriers Or How The Distinction Effects Licensure By The Federal Motor Carrier Safety Administration ..................................................................................................6

    F. Omneon Had No Authority To Enter Into An Accord And Satisfaction Binding Either PPI Or OneBeacon ..................................................................7

III. CONCLUSION ............................................................................................................7

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

There are now three elephants in the room. Haas' opposition does not contest liability. All the elements necessary to prove a Carmack case, including the $104,500 damage amount are uncontested. The case boils down to whether or not Haas successfully jumped through the requisite hoops to limit its liability to $88.00.

Haas ignores the cautionary language in the opening brief concerning the distinctions between air, ocean and Carmack rules, and cites inapposite law frequently, all the while admitting this is a Carmack amendment case.

Last, Haas undertakes no effort whatsoever to defend or explain why its shipping documentation is such a hodgepodge.

At the outset, it also bears noting that while Haas chooses to ignore the undisputed facts, it is not above concocting a few of its own. Draped in the linen of expert opinion, the Declaration of Carmen Holster attempts to establish in paragraphs 5 and 11 that a limitation of liability in the paltry amount of .50 lb is a motor carrier industry standard and that shippers who decline to declare a value do so because they choose to separately insure. These views are betrayed not only by the Declaration of John Gibbs who has served at the top of the industry for 22 years, but also by judicially noticeable facts recounted in the case law. See: Siren, Inc. v. Estes Express, 249 F.3d 1268 (11th Cir. 2001) ($11.87 per pound), Rohner Gehrig Co., Inc. v. Tri State Motor Transit, 950 F.2d 1079 (5th Cir. 1992) ($2.50 per pound), Mechanical Technology, Inc. v. Ryder Truck Lines, Inc., 776 F.2d 1085 (2nd Cir. 1985) ($5.00 per pound), Asset Management Control v. ABF Freight Systems (N.D. N.Y. 1998) ($5.00 per pound), none of which were subrogation actions. Whether or not to pay an excess valuation charge, separately insure, or take the risk of saving a few dollars by flying solo are individual business decisions which do not lend themselves to the neat presumptions of paragraph 11.

The one key fact that Haas' opposition confirms is that it neither had a contract under 49 U.S.C. 14101(b) expressly waiving the actual value remedy provided in 49 U.S.C. 14706, nor a tariff provision alerting its shippers what their excess valuation charges would be as required by the longstanding four part test. Instead, Ms. Holster's declaration reveals that the only way for a

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

shipper to calculate those charges was not by referencing the bill of lading, a tariff, or even the company's website, but rather by referring to a "Dear Customer" letter (Exhibit B) which she cannot confirm was actually sent to Omneon and which she herself only stumbled upon a few days ago.

Thus, Haas has to fall back on the argument "whether or not Haas had a detailed printable tariff is irrelevant" (p. 5:18-19) and "Omneon's shipment was not household goods, so no written tariff was required." (p. 6:27-28). This is of course, ridiculous. The existence of a tariff is the first prong, and the second and third prongs are impossible to satisfy without one.

Finally, it cannot go without mention that key authorities cited in the opening brief, such as Spray-Tek, Inc. v. Robbins Motor Transport, Inc., supra; Sompo Japan Insurance v. Union Pacific, supra; and Emerson Electric Supply v. Estes Express Lines, supra and language lifted from the statute itself are obtusely ignored.

## II. ARGUMENT

### A. There Is No Three Part Test; It Is Still A Four Part Test And Haas Cannot Satisfy It.

Haas argues that the four part test found in Hughes Aircraft v. North American Van Lines, supra, is now a three part test because carriers no longer file their tariffs with the Interstate Commerce Commission. Haas notes that ICCTA merely implies that a carrier must maintain a private tariff under 14706(c)(i)(B). That may be so, but it does not follow that the four-part test has been shrunk. In Jackson v. Brook Ledge, Inc. supra, the Court noted that "In order to effectively limit its liability, a carrier must jump through the requisite hoops." Id. p. 645 and that one of those hoops was the maintenance of a private tariff. Id. 645-646. The only circumstance in which a tariff schedule would not be necessary is where the limitation and the means to avoid it appear on the face of the bill of lading. Here, it does not.

### B. The Fact That PPI's Loss Was Covered By OneBeacon Does Not Trigger Application Of The Liability Limitation

Relying almost exclusively upon two non-Carmack cases, as well as the demonstrably inaccurate assertions in paragraph 11 of the Holster Declaration, Haas contends that as a matter

of law a party who has business insurance is automatically deemed to have accepted the carrier's limitation of liability. Not so.

Haas' citation to <u>Read-Rite Corporation v. Burlington Air Express, Ltd.</u>, 186 F.3d 1190 (9th Cir. 1999) is either selectively edited, misinformed, or both. <u>Read-Rite</u> is not particularly useful as a precedent because the decision is woefully nonspecific about one underlying fact: whether the insurance referenced therein was a general policy to guard against what may happen on a rainy day, or one purchased specifically in connection with the particular transaction at hand. Neither the opinion itself nor the district court decision (which was unpublished) flat out say so. However, a careful reading of <u>Read-Rite</u> and this court's decision at 183 F.R.D. 545 (N.D. Cal. 1988) as well as application of simple logic compel the conclusion that the Ninth Circuit did not cast the wide net Haas believes it did.

First, the purchase in <u>Read-Rite</u> was not a routine purchase of inventory, but a major capital acquisition: a cluster sputter custom made overseas. The machine was broken down into ten crates, one of which was damaged. Awarding the limitation value instead of full value, that one crate was valued at $66,000. An extremely conservative estimate would place the value of the cluster sputter at at least $500,000 and a reasonable estimate would put it over $1,000,000. Whatever it was, the parties believed it was worth it to take a dozen overseas depositions to find out.[1] Moreover, the plaintiff knew before the shipment moved that the cluster sputter would be subject to the $9.07 lb limitation provided in the Warsaw Convention, a limitation less than half that which was enforced. (It was only because the defendants deviated from making a direct air shipment that Burlington's $20.00 waybill limitation was applied.) <u>Read-Rite</u> had ample motivation to purchase spot insurance.

Most importantly, however, the <u>Read-Rite</u> court relied upon the precedent in a COGSA case, <u>Vision Airflight Services v. M/V National Pride</u>, 155 F.3d 1165 (9th Cir. 1998) which makes it plain that spot insurance was purchased to cover the specific shipment at issue in lieu of the increased freight charge. <u>Id.</u> p. 1167. Here, PPI did not purchase insurance specific to the

---

[1] Both counsel in that case have unfortunately succumbed to cancer well before their time.

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

shipment. (Maus Declaration, para. 2).

The only Carmack case adopting Read-Rite is Atlantic Mutual v. Yasutomi Warehousing, supra. However, that language not only is dicta but the entire decision is of dubious persuasive value because the PLAINTIFF DID NOT FILE AN OPPOSITION to the defendant's motion. The court only heard one side.

There is no competent precedent to support Haas' contention that in a Carmack setting the purchase of broad based business insurance constitutes the knowing choice required by the second and third prongs of the Hughes Aircraft test.

### C.    Haas' Course Of Dealing Argument Is A Non-Sequitur

Haas relies upon Yasutomi Warehousing to make the argument that since it had carried 156 shipments for Omneon before that somehow this creates a course of dealing from which Omneon's acquiescence to the limitation can be imputed.

Again Yasutomi is of dubious value given that the plaintiff did not bother to oppose the defendant's motion. Yasutomi relied upon what Haas only describes as "another case" which in fact was Insurance Co. of North America v. NNR Aircargo Service, 201 F.3d 1111 (9th Cir. 2000) which among other things holds "we have no basis for applying the Carmack amendment here." NNR defined a course of dealing as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Id. p. 1112. NNR, which was a draymen operating in an exempt commercial zone need not and did not issue bills of lading. But its 47 previous invoices all reflected its enforceable, non-Carmack limitation of liability. NNR and Yasutomi were both cases where an established longstanding limitation was enforced despite the fact that the paperwork got lost.

Here, the necessary paperwork was not lost. It never existed at all.

All that can be shown here is that on 156 prior occasions Haas did things wrong and got away with it. In Yasutomi, the bill of lading stated how much the excess valuation charge would be if a value was declared. Therefore, the shipper was on notice of what it needed to know. Here the shipper was kept in the dark 156 times.

4

### D. There Is No Reason For The Court To Conclude That The Fifty Cent Limitation Of Liability Is Anything But Unreasonable

The statute, cited in the opening brief, says what it says: the value established by the limitation of liability must be reasonable under the circumstances. 49 U.S.C. 14706(c)(1)(a). See also: Conference Committee Report, U.S. Code and Administrative News 104th Cong. First Sess. (1995) p. 907. Haas does not refute that reasonableness is a legal issue.

Instead, it makes two arguments. The first is that the .50 lb limitation is an industry standard. It is an airfreight industry standard which has no place in a Carmack case. A motor carrier simply cannot avoid its legal obligations under Carmack by drafting shipping documents which ape those from a different industry.

The second argument is that the vast disparity between the actual value and the limited value is not unreasonable per se. Haas relies upon Martino, S.A. v. Transgroup Express, 269 F.Supp 2d 448 (S.D. N.Y. 2003) to support its point. However, Martino relied exclusively on two domestic airfreight precedents applying common law instead of Carmack, and more importantly, did not even address the issue of reasonableness under the circumstances. American Cyanamid v. New Penn Motor Express, 979 F.2d 310 (3rd Cir. 1992) contained an unusual circumstance not present here: the extremely low valuation was pre-printed on a bill of lading form prepared by American Cyanamid itself, which was clearly opting to self insure in exchange for lower charges..

Haas misses an important point. In most circumstances, a vast disparity between the actual value and the limited value is the obvious place to begin any such inquiry. In limited circumstances, not present here, it makes sense to require the shipper to self-insure because the value of its freight might exceed the carrier's ability to pay. As truckers like to say: "One load can't make ya, but one load can break ya."

In 1977, the former Interstate Commerce Commission recognized this conundrum when it issued Released Rates Order No. MC 894 353 ICC 661 (1977). The petitioner in that proceeding was IBM, which was having trouble finding carriers willing to haul mainframe computers. The Commission issued an order permitting carriers to haul commodities of

extraordinary value with minimal risk. IBM was more than willing to self-insure in order to obtain service.

In that circumstance a wide gap between actual value and limited liability is reasonable under the circumstances. Here, it is not, and Haas offers no argument explaining why it is.

**E.    Haas Completely Mischaracterizes The Effect ICTTA Has On The Distinction Between Common And Contract Carriers Or How The Distinction Effects Licensure By The Federal Motor Carrier Safety Administration**

ICCTA did not eliminate the distinction between contract and common carriage. Instead, it simply did away with the requirement to have two separate licenses if you wish to perform both. As outlined in the opening brief on page 8, prior to 1980 no carrier could have both authorities. Subsequent to the Motor Carrier Act of 1980, carriers could. Almost everyone got both. Congress thought the dual licensing regime was silly and duplicative and merged them in ICCTA. However, contract carriage is still separately defined in the act at 49 U.S.C. 13102(4) as "transportation service provided under an agreement entered into under section 14101(b)." In other words, a contract carrier operates pursuant to a contract and 49 U.S.C. 14101(b) permits that contract to expressly waive Carmack remedies. A carrier operating without one is a common carrier, and has to satisfy the four part test.

Haas fails to appreciate the impact of the holding in <u>M. Fortunoff of Westburg Corp. v. Peerless Insurance Company</u>, 432 F.3d 127 (2nd Cir. 2005). The <u>Fortunoff</u> court recognized that the FMCSA has an interest in preserving the BMC-32 insurance endorsement as a protection for the mom and pop shippers who frequent common carriers. Therefore, the court approved the mechanism by which FMCSA assures that carriers who do not have the endorsement will not engage in common carriage: carriers with the endorsement on file are dubbed common carriers and can perform either function. Carriers who do not procure the endorsement are dubbed contract carriers and can perform that function only.

Haas admits it has contract carrier authority only. It did not have a contract carriage agreement with Omneon which expressly waived the actual value remedy in Carmack. It did not

have a tariff either. But even if it did, it could not rely upon it because it is not a common carrier.

### F. Omneon Had No Authority To Enter Into An Accord And Satisfaction Binding Either PPI Or OneBeacon

Contrary to Haas' contention, <u>AXA S.A. v. Union Pacific Railroad</u>, 269b F.Supp.2d 863 (S.D. Tex. 2003) is not remotely on point. AXA settled with the U.P. and tried to back out. Here, Omneon filed a claim with Haas because Haas, in yet another example of its unfamiliarity with the law, refused to entertain a claim from anyone except the shipper.

As already underscored in the opening brief's citation to <u>Spray-Tek, Inc. v. Robbins Motor Transport, Inc.</u>, <u>supra</u>, a claim can be filed by the shipper, the consignee, or the owner of the freight. The fact that the terms of the Omneon/PPI contract were FOB Omneon's dock is relevant because as a matter of law, title to the shipment as well as the risk of loss had shifted to PPI prior to the freight being lost. <u>The MC Electronic Materials v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1374 (Fed. Cir. 2005). Therefore, PPI, and therefore, OneBeacon, have independent standing to file a claim or a lawsuit.

Haas makes no effort to establish that Omneon was somehow acting as PPI's agent. Omneon was looking out for itself by trying to pry out of Haas the money it was owed by PPI.

The burden of proof is on the defendant to show that there was an acceptance of the sum tendered and that such acceptance was by the plaintiff or one authorized by it to act, or else there was a subsequent ratification by plaintiff of the acts of its agents in the alleged accord and satisfaction, all to the end that it be shown the minds of the parties have been met in accordance with recognized contractual principles. <u>Eckert-Fair Const. Co. v. Capitol Steel & Iron Co.</u>, 178 F.2d 338, 340 (5th Cir. 1949)

Haas cannot meet that burden, and in fact has not even tried.

### III. CONCLUSION

If Haas is to believed, it has been shipping products since 1989 under rules designed to be forgiving to air carriers, rather than the rules that apply by law and favor the shipper. This means of course that innocent shippers have no doubt been duped into accepting settlements pursuant to

1 limitations that cannot legally be enforced.  It also means that freight forwarded and carriers who
2 follow the rules have been put at a competitive disadvantage.
3      The sixteenth affirmative defense should be rejected and given the absence of any other
4 disputed issues, judgment should be entered in favor of the plaintiff consistent with the holding
5 in Missouri Pacific Railway v. Elmore & Stahl, supra.

                               Respectfully submitted

DATED: March 19, 2008             JAMES ATTRIDGE

                          By: _____/s/ James Attridge_____
                               JAMES ATTRIDGE
                               Attorney for Plaintiff
                               ONEBEACON INSURANCE COMPANY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT