1  JAMES ATTRIDGE [SBN NO. 124003]
   Business Trial Lawyer
2  The Fox Plaza, Suite 1204
   1390 Market Street
3  San Francisco, CA 94102
   Telephone:    (415) 552-3088
4
   Attorney for Plaintiff
5  ONEBEACON INSURANCE COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11 | ONEBEACON INSURANCE COMPANY,       | Case No: C-07-3540 BZ (MEJ)
12 |            Plaintiff(s),           | SUPPLEMENTAL MEMORANDUM IN
   |                                    | SUPPORT OF PLAINTIFF'S MOTION
13 |       v.                           | FOR SUMMARY JUDGMENT OR, IN THE
   |                                    | ALTERNATIVE, FOR PARTIAL
14 | HAAS INDUSTRIES, INC.,             | SUMMARY JUDGMENT
15 |            Defendant(s).           |
   |                                    | Date:      April 2, 2008
16 |                                    | Time:      10:00 a.m.
   |                                    | Courtroom: Courtroom G
17

18

19 **THE REPEAL OF THE TARIFF FILING REQUIREMENT HAS NOT
   SIGNIFICANTLY ALTERED THE FOUR PART TEST, OTHER THAN TO GET THE
20 GOVERNMENT OUT OF THE DOCUMENT STORAGE BUSINESS**

21     The regulation of motor carriers was radically altered, albeit in a piecemeal fashion,

22 between 1975 and 1995. The driving forces behind the legislation which eliminated the tariff

23 filing requirement were two fold: (1) the shift in the political/economic zeitgeist away from big

24 government, *see*: Thomas, William, Rullin on … To a Free Market: Motor Carrier Regulation

25 1935-19890" Transportation Law Journal, Vol. XIII, No. 1 (1983), p. 43, 68-79; and (2) the

26 negotiated rates crisis precipitated by the reaffirmation of the filed rate doctrine in Maislin

27 Industries v. Primary Steel, 497 U.S. 116, 111 L.Ed.2d 94 (1990) and Reiter v. Cooper, 507 U.S.

28 258, 122 L.Ed.2d 604 (1993). *See*: In Re Olympia Holding Corp., 88 F.3d 952 (11th Cir. 1996)

for historical overview.

In response to this crisis Congress passed the Negotiated Rates Act of 1993, Pub. Law 103-180, Stat. 2044 (1993) and later, the Trucking Industry Regulatory Reform Act of 1994, Pub. Law 103-311, 108 Stat. 1683 (1994) which eliminated the tariff filing requirement for the purpose of sunsetting the filed rate doctrine in transportation. In 1995, President Clinton called for the elimination of the Interstate Commerce Commission in his State of the Union Address and the newly elected Republican Congress obliged. ICCTA Pub. Law 104-88, 109 Stat. 803 (1995).

Throughout this entire period of radical change, the Carmack amendment itself went virtually untouched.

Likewise, the claims filing rules adopted by the ICC remained intact. 49 C.F.R. 1005, 1035. All of the stakeholders agreed that Carmack was not broke and did not need fixing.

In an example of the law of unintended consequences, the repeal of the tariff filing requirement impacted the four part test but no one could figure out just how.

Six weeks before passage of ICCTA an attorney specializing in commercial litigation and equine law, Kenneth Jackson, sued Brook Ledge Inc., for killing his thoroughbred and tried to avoid the limitation of liability on the defendant's bill of lading. Jackson v. Brook Ledge, Inc., supra, thrashes about a great deal on the question of whether TIRRA altered the four part test. It did not have to, because:

> In its bill of lading, Brook Ledge stated that there would be an additional charge, to wit $0.50 for each $100, or fraction thereof, of such excess valuation for each hundred miles …
>
> In light of the foregoing, the Court finds that Brook Ledge would have met the first requirement of the original four-prong test if the same were applicable.

Id. p. 646.

Moreover, Jackson notes:

> While the TIRRA provision rendered all tariffs then on file with the ICC null and void, TIRRA did not prevent carriers from maintaining its tariffs and operating pursuant thereto as long as carriers also complied with the new statutory provisions of TIRRA.

Id. p. 645, fn. 10

Congress clearly never intended to eliminate the use of private tariffs and therefore has never acted to repeal the first prong. Otherwise, it would have expressly done so. Emerson Electric Supply v. Estes Express Lines, supra, p. 187.

There are four very basic reasons why it is safe to assume that Congress anticipated that filed tariffs would be supplanted by privately maintained ones. The first is downright practical: tariffs are the mechanism by which freight charges are calculated. Without them bills of lading would all be a ream long. Second, previously deregulated industries like airlines and railroads adopted analoges to private tariffs, known as air service guides or exempt rail circulars. Yamazen USA v. Chicago & Northwestern Transportation Company, 790 F.2d 621 (7th Cir. 1986). Third, rate bureaus which generate generic tariffs which carriers can adopt as private tariffs of their own in exchange for a fee still enjoy a specific anti-trust exemption. 49 U.S.C. 13703.

Finally, maintaining private tariffs is what the industry did in response to deregulation. In Tempel Steel Corp. v. Landstar Inway Inc., 211 F.3d 1029 (7th Cir. 2000), Judge Easterbrook noted that "carriers adopt standard contractual terms which some call 'tariffs' out of habit which are nonetheless incorporated by reference." Despite a limitation of liability in Landstar Inway's tariff, the Court refused to enforce it, relying upon the pre-TIRRA Seventh Circuit standard::

> "Tempel would not have had any reason to track down Landstar's standard terms — and it has long been established — quite apart from the language of Landstar's "tariff" — that actual notice is necessary for a limitation of liability to be enforced..."

Id., p. 1030.

Prior to TIRRA and ICCTA, the Ninth Circuit, like the Sixth and Seventh Circuits embraced the four-part test and construed it strictly against the carriers. In Hughes Aircraft v. North American Van Lines, 970 F.2d 609 (9th Cir. 603, 1992) the Court upheld the limitation of liability because Hughes Aircraft itself had written the contract incorporating the tariff and therefore had no logical reason to claim it was ignorant of it. The Court still held:

> The filing of a tariff alone does not limit the carriers

> liability; the shipper must be given a "reasonable opportunity" to choose to accept the carrier's proposed limit.  A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and <u>the opportunity to obtain information necessary to making a deliberate and well-informed choice</u>.

Id, p. 612.

Because ICCTA was designed to keep Carmack undisturbed, pre-ICCTA law still controls in the Carmack context, save for the necessity that tariffs be filed.

Since the passage of ICCTA courts within this circuit have continued to recognize that tariffs must still be maintained even if no longer filed if a carriers wishes to limit its liability. <u>IPEC Planar v. Mach 1 Air Services, Inc.</u>, 129 F.Supp.2d 1265, 1272 (D. Az. 2000) (limitation upheld where, unlike here, the declared value charge was printed on the back side of the waybill.); <u>Consolidated Freightways Corp. of Delaware v. Travelers Ins. Co.</u>, No. 00-CV-20726, WL 22159468, p. 7 (N.D. Cal. 2003) ("where the carrier provides the bill of lading, it should incorporate the carriers tariff by reference."); <u>Shielding International v. Oak Harbor Freight Lines</u>, supra.  Each case recites by rote the four part test.  Accord: <u>Emerson Electric v. Estes Express</u>, supra, p. 188.

In all of the case law, whether the limitation is upheld or not given the circumstances, one fact makes Haas stand alone from all other carrier defendants:  Each of them had a limitation of liability either printed on the bill of lading itself or in a tariff.  Haas did not.

The only tariff Haas maintained was a one-page rate sheet that made no reference to the limitation of liability.  Holster Declaration, Exhibit A.  Counsel for OneBeacon asked twice for the pertinent tariff and the rate sheet is all that was provided.  The rate sheet is all that was provided in the Initial Disclosures.  In paragraph 3 of her Declaration, Ms. Holster admits that if a shipper asked for a tariff, Exhibit A is all they would get.

The law requires that if you wish to limit liability by means of a schedule not on the bill of lading itself, that the terms of that limitation be outlined in a tariff incorporated into that bill by reference.

Haas' shipping documents make copious references to just such a tariff, but the tariff

1  required to limit its liability does not exist.  The pie still has no filling.

                                                Respectfully submitted

DATED:  April 8, 2008              JAMES ATTRIDGE


                            By:         */s/ James Attridge*
                                   JAMES ATTRIDGE
                                   Attorney for Plaintiff
                                   ONEBEACON INSURANCE COMPANY

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR. IN THE ALTERNATIVE. FOR PARTIAL SUMMARY JUDGMENT