1   **COUNTRYMAN & McDANIEL**
    MICHAEL S. McDANIEL   [State Bar No. 66774]
2   cargolaw@aol.com
    GEOFFREY W. GILL      [State Bar No. 163621]
3   gwg@cargolaw.com
    LAX Airport Center, Eleventh Floor
4   5933 West Century Boulevard
    Los Angeles, California  90045
5   Telephone:  (310) 342-6500
    Facsimile:  (310) 342-6505
6
    Attorneys for defendant
7   HAAS INDUSTRIES, INC.

8                **UNITED STATES DISTRICT COURT**

9         **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO**

10

11  ONE BEACON INSURANCE COMPANY, ) CASE NO. 3:07-CV-03540-BZ
    a corporation,                )
12                                )  REPLY TO PLAINTIFF'S
               Plaintiff,         )  SUPPLEMENTAL MEMORANDUM
13                                )
        vs.                       )
14                                )  REPLY DATE: April 18, 2008
    HAAS INDUSTRIES, INC., a      )  SETTLEMENT
15  corporation,                  )  CONF. DATE: June 11, 2008
                                  )  TRIAL DATE: July 1, 2008
16             Defendants.        )
    _____ )
17

18      At the hearing upon plaintiff One Beacon's motion for summary

19  judgment, One Beacon's counsel requested permission to file a

20  supplemental brief in support of plaintiff's contention that a

21  motor carrier, even after 1995 ICCTA, must maintain a tariff within

22  prescribed guidelines of the ICC.  This is the "first" of four pre-

23  ICCTA conditions to have been met by a motor carrier if it

24  successfully would limit its liability.  *Hughes Aircraft vs. North*

25  *American Van Lines,* 970 F.2d 609 (9th Cir. 1992), a household goods

26  movement case.  The court granted counsel's request and this is

27  defendant Haas' reply to One Beacon's Supplemental Memorandum,

28  filed April 8.

                              - 1 -
    _____
    L:\Cases\HAAS\One Beacon\Answer-2.wpd
                REPLY TO SUPPLEMENTAL MEMORANDUM

1    Post ICCTA case law demonstrates that the first Hughes "prong"

2 relied upon by One Beacon as been <u>replaced</u> by the limited

3 requirement that a non-household goods motor carrier need only

4 maintain internally a schedule of rates, sometimes referred to as

5 a "tariff," and upon the request of a shipper, provide to the

6 shipper a written copy of the basis for the motor carrier's rates.

7

8    To set the stage properly, One Beacon's misdirected emphasis

9 upon the term "tariff" needs to be addressed.  See One Beacon's

10 Supplemental Memorandum, page 4: "...tariffs must still be

11 maintained ..."  Contrary to One Beacon's urging, a "tariff"

12 requires no talismaic formalism.  In Tempel Steel Corporation vs.

13 Landstar Inway, Inc. 211 F.3d 1029 (7th Cir. 2000), the court stated

14 at page 1030: "Today carriers adopt standard contractual terms,

15 which some call 'tariffs' out of habit, but which should have no

16 effect apart from their status as contracts."  A Tariff when, as

17 here, is not required to be filed with a governmental agency, is no

18 more than a listing of charges and the rules and practices upon

19 which the charges are based.  This is what Haas had available and

20 would have provided to One Beacon, if requested.  Holster decl.,

21 paragraph 3 and Exhibit "A" ("standard tariff") and paragraph 4 and

22 Exhibit "B" ($.70 per $100.00 declared value extra freight charge).

23 Exhibit "A" shows that the basic charge is derived by the shipment

24 weight of 554 lbs. (Exhibit "C") being multiplied by a cost per

25 pound determined by the number of "zones" crossed and number of

26 days for delivery.  Exhibit "B" shows that the extra charge for

27 declared value was $.70 per $100 of value declared by the shipper

28 on the bill of lading.

- 2 -

1   Returning to the point at issue, post-ICCTA case law
2   emphatically states that the first prong no longer is applicable.
3   Tempel supra at 1030-31: "The ICC Termination Act, ..., abolished
4   the tariff filing requirement and the filed-rate doctrine, ....
5   Carriers ... may set out schedules of values and prices, with
6   higher charges for the transportation of more valuable cargo."

7

8   In its Supplemental Memorandum, One Beacon at page 3 argues by
9   implication that Congress upholds the "first prong" by never acting
10  to repeal it, citing *Emerson Electric Supply Company v. Estes*
11  *Express Lines*, 451 F.3d 179 (3d Cir. 2006). However, Emerson in
12  discussing Congressional intent is referring not to the first
13  prong, but rather to multi-layered liability – the subject of the
14  second and third "prongs." Emerson's consideration of the first
15  prong is limited to footnote 6, in which the first prong test is
16  described as having been altered, with the first prong only
17  requiring that the carrier, if requested, provide the shipper with
18  information upon which any rate is based.

19

20  We emphasize, for the purposes of this Reply, that Haas
21  offered a tariff within the meaning of the altered first prong.

22

23  The several cases cited by One Beacon at page 4 of its
24  Supplemental Memorandum upon examination do not support One
25  Beacon's argument.

26

27  In IPEC Planar v. Mach 1 Air Services, Inc., 129 F.Supp,2d
28  1265 (D.Az. 2000), the first prong was satisfied where the motor

- 3 -

1  carrier makes its tariff available to shippers <u>on request</u>, as Haas

2  would have done had Omneon so requested.  Holster decl., paragraph

3  3.  *IPEC* addresses several other issues raised by One Beacon.  A

4  $50.00 per shipment or $.50 per pound limitation was upheld upon a

5  shipment valued at 3.5 million dollars, at 1267, and the cargo

6  interest relied upon its general insurance policy to cover damage

7  in transit (same page) rather than declare a value and pay higher

8  freight charges.

9

10  *Consolidated Freightways v. Travelers Insurance*, 2003 WL

11  22159468 (N.D. Cal. 2003), upheld a first level limitation of

12  $100,000.00, but denied a $1,000.00 limitation because as to the

13  latter there was no evidence of reasonableness under the

14  circumstances of the transportation, nor that a reasonable

15  opportunity to choose between two levels of liability was given,

16  and the carrier's limitation tariff was not incorporated into the

17  bill of lading.  The evidence in the case of bar, however,

18  addresses each of these deficiencies:

19

20      1.  Ms. Holster's declaration establishing the commonality of

21          a $50.00 per shipment $.50 per pound limitation is

22          rebutted only by a One Beacon showing that other

23          limitation values may exist, but One Beacon offers

24          neither evidence nor affirmation that Haas' limitation is

25          unreasonable;

26

27      2.  Application of the imitation, unless a higher value was

28          declared and charges paid, provided the shipper a choice

- 4 -

1    between two levels of liability; and

2

3        3.    The face of Haas' bill of lading offered the shipper an

4              alternative  to  limited  liability  which  the  shipper

5              declined, so an incorporation argument is irrelevant.

6

7    *Shielding International, Inc. v. Oak Harbor Freight Lines*, 442

8    F.Supp.2d 1092 (D.Or. 2006), is simply wrong on the law in its

9    statement that all the Hughes requirements must be met – the

10   Shielding court fails to discuss the first prong; and had it done

11   so, the court presumably would have seen (and corrected), its

12   error.  Perhaps the problem lies in the fact that as stated in One

13   Beacon's Supplemental Memorandum the citation of the Hughes factors

14   was "by rote" rather than analytical.

15

16       Additional case authority further supports Haas' position.  In

17   *Travelers Property v. A.D. Transport*, 2007 WL 2571957 (D.N.J.), the

18   court stated that as to motor carriers, such as Haas, the first

19   prong has been replaced, such that the carrier need only "provide

20   to the shipper upon request a written copy of the basis for its

21   rate [,]" citing *Emerson*, and enforced as apparently "reasonable

22   under  the  circumstances  of  the  transportation"  alternative

23   limitations of $50.00 per shipment or $.50 per pound.  Also holding

24   the motor carrier to the same obligation to provide upon request a

25   written copy of a basis for its rate is *Diamond Transportation*

26   *Group, Inc. v. Emerald Logistics Solutions, Inc.*, 2006 WL 1789036

27   (E.D.Pa.).

28

- 5 -

L:\Cases\HAAS\One Beacon\Answer-2.wpd
REPLY TO SUPPLEMENTAL MEMORANDUM

1  Dated: April 18, 2008          **COUNTRYMAN & McDANIEL**
                                  MICHAEL S. McDANIEL
2                                 GEOFFREY W. GILL

3

4

5                        By:     _____
                                 GEOFFREY W. GILL
6                                Attorneys for defendant
                                 HAAS INDUSTRIES, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

L:\Cases\HAAS\One Beacon\Answer-2.wpd
REPLY TO SUPPLEMENTAL MEMORANDUM