UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ONEBEACON INSURANCE COMPANY, | ) ) | |
| Plaintiff(s), | ) ) | No.  C07-3540 BZ |
| v. | ) ) | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |
| HAAS INDUSTRIES, INC, | ) ) | |
| Defendant(s). | ) ) ) | |

Professional Products, Inc. (PPI) purchased electronic equipment from Omneon Video Networks (Omneon).  The equipment was to be shipped to the City University of New York (City University).  Omneon contracted with defendant Haas Industries, Inc. (Haas) to ship the equipment.[1]  When the equipment was delivered to City University, the shipment was short equipment valued at $105,647.

PPI filed a claim with plaintiff OneBeacon, its transit and property insurance carrier.  OneBeacon paid the claim and

---

[1] All parties have consented to my jurisdiction, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) for all proceedings.

1

then filed a subrogation claim for cargo loss against Haas to recover the cost of the lost equipment. OneBeacon has moved for summary judgment, or in the alternative for partial summary judgment as to Haas' Sixteenth Affirmative Defense that liability is limited to $0.50 per pound. In its opposition papers, Haas requests that OneBeacon's claims be dismissed because Haas' payment to Omneon constituted an accord and satisfaction. The court treats this request as a motion for summary judgment on Haas' Thirteenth Affirmative Defense.

**The Carmack Amendment**

The parties agree that this dispute is governed by the Carmack Amendment, 49 U.S.C. § 14706.[2] Under the Amendment, a carrier is liable for the "actual loss or injury to the property" it carries in interstate commerce unless otherwise agreed with the shipper. Id.; Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc., 201 F.3d 1111, 1115 (9th Cir. 2000); Hughes Aircraft v. N. Am. Van Lines, 970 F.2d 609, 611 (9th Cir. 1992); Atlantic Mut. Ins. Co. v. Yasutomi Warehousing & Distribution, Inc., 326 F.Supp.2d 1123, 1126 (C.D. Cal. 2004) (Yasutomi).

**OneBeacon's Standing to Sue**

As an initial matter, although not adequately addressed in the moving papers or during argument, a serious question

---

[2] Although the court has reservations about whether this transaction is subject to the Carmack Amendment since the equipment was transported by air and Haas' bill of lading states it is an Airbill, the parties stipulated that the Carmack Amendment governs this dispute.

1  exists whether OneBeacon has standing to bring the instant
2  suit.  Omneon is listed as the shipper and City University as
3  the consignee on the bill of lading.  PPI is not listed
4  anywhere on the bill of lading and did not contract with Haas
5  to ship the equipment.
6      The Carmack Amendment provides that the carrier is
7  "liable to the person entitled to recover under the receipt
8  or bill of lading."  49 U.S.C. § 174706(a).  Haas asserts
9  that "the proper parties to bring a Carmack action are the
10 parties named in the bill of lading" citing Windows, Inc. v.
11 Jordan Panel Systems, Corp., 177 F.3d 114, 118 (2nd Cir.
12 1999)(Def.'s Supp. Br. p.2, lns. 8-9).  While Windows states
13 that persons who may sue under the Carmack Amendment are
14 those entitled to recover under the bill of lading, it also
15 states without any analysis, that a buyer or seller of
16 shipped goods is such a person. Here, PPI had bought the
17 goods from Omneon and was selling them to City University.
18     OneBeacon relies on a number of cases which have either
19 assumed that the owner of goods may sue under the Carmack
20 Amendment even if not named in the bill of lading, or have so
21 stated generally, without any analysis or explanation of
22 their decision.  See e.g. Spray-Tek, Inc. v. Robbins Motor
23 Transp., Inc., 426 F.Supp.2d 875, 883 (W.D. Wis. 2006); Banos
24 v. Eckerd Corp., 997 F.Supp. 756, 762, (E.D. La. 1998);
25 Delaware, L.& W. R. Co. v. U. S., 123 F.Supp. 579, 581 (S.D.
26 N.Y. 1954).  The court has not found a single case decided
27 after the relevant language of the Carmack Amendment was
28 amended in 1978 addressing the issue of whether an owner of

3

goods, who was not listed on or a party to the bill of lading, did not negotiate with the carrier, and was not the receiving party of the shipment, has standing to sue for cargo loss.

On the one hand, considerations of judicial economy suggests that the owner of the goods should be able to sue the carrier directly under the Carmack Amendment. The alternative would be for the owner to sue the consignor or shipper who would then have to sue the carrier. On the other hand, the weakness in granting OneBeacon standing is illustrated by Haas' accord and satisfaction defense. After the loss, Omneon presented a claim to Haas for $154,912.50.[3] Haas replied that its liability was limited by the bill of lading to $88.00 and tendered Omneon a check in that amount. Omneon cashed the check. Absent some explanation from Omneon, this would seem to be a accord and satisfaction between Haas and Omneon. In response to Haas' motion, OneBeacon insists that Omneon had no authority to enter into an accord and satisfaction that binds PPI since it was not PPI's agent. Allowing someone not a party to the bill of lading to sue the carrier after it has reached an accord and satisfaction with the shipper would seem to discourage carriers from settling claims.

Under the facts of this case it is not clear that OneBeacon has standing to sue under the Carmack Amendment.

---

[3] OneBeacon contends Omneon presented the claim on PPI's behalf but denies Omneon was PPI's agent. No explanation is given for why a $154,000 claim was made for a $105,000 loss.

However, I need not resolve this issue because, as explained below, Haas has successfully limited its liability.

**Limited Liability Under Carmack**

A carrier can limit its liability under the Carmack Amendment.

> If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies.

49 U.S.C. § 14101(b)(1).

To limit its liability under the Carmack Amendment, the carrier must:

> (1) obtain an agreement with the shipper based on a choice of liability; (2) give the shipper a reasonable opportunity to choose between levels of liability; and (3) issue a bill of lading prior to shipment.

Yasutomi, 326 F.Supp.2d at 1126. Haas has the ultimate burden of showing it has limited its liability. Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F.Supp.2d 199, 201 (W.D. N.Y 2000). Here, OneBeacon insists that Haas did not give the shipper a reasonable opportunity to choose between levels of liability because: (1) Omneon could not tell from the face of the bill of lading how much more the shipping would cost if it declared the actual value of the equipment and (2) Haas did not maintain a private tariff. OneBeacon is incorrect on both counts.

Pursuant to the practice between Omneon and Haas, Omneon possessed blank Haas bills of lading, which Omneon completed

1  prior to shipping.[4]  The front of Haas' bill of lading
2  contains a conspicuous capitalized warning:

>   DECLARED VALUE AGREED AND UNDERSTOOD TO BE NOT
>   MORE THAN $.50 PER POUND, PER PIECE, OR $50.00
>   WHICHEVER IS HIGHER UNLESS HIGHER VALUE DECLARED
>   AND CHARGES PAID.  FREIGHT BILL SUBJECT TO
>   CONDITIONS SET FORTH ON REVERSE SIDE.

To the left of the warning is a box marked "DECLARED VALUE FOR CARRIAGE $" with a blank space provided to list the value of the shipment.  The Conditions of Contract Carriage on the reverse side of the bill of lading again state the $0.50 per pound liability limitation "in the absence of a higher declared value for carriage" and that "[d]eclared values for carriage in excess of $0.50 per pound, per piece, shall be subject to an excess valuation charge."  (Holster Dec. at Ex. D, ¶ 8.)[5]  Omneon left the declared value box on the bill of lading blank.

Neither side provided testimony from Omneon as to why this box was left blank or testimony from PPI, in whose shoes OneBeacon stands, as to whether PPI requested Omneon to declare the higher value.  However, it is undisputed that the arrangement between Omneon and PPI was that Omneon would ship

---

[4] OneBeacon's contention that Haas should have put the amount of the extra charge on the face of the bill is neither required by law nor commercially reasonable.  Haas' bill of lading is a preprinted form, that its customers fill out.  Haas is not required to list its excess valuation charges on the bill of lading by 49 U.S.C. § 14706(a)(1)(B) or the law of this circuit.  Doing so would result in Haas having to reprint and redistribute the bill of lading every time its valuation charge changed, and could create confusion if customers continued to use an old form.

[5] Moreover, Haas requires that for "shipments having declared values over $25,000.00, [it] must be given advance notice prior to pick up."  (Id. at ¶ 13.)

the goods FOB its facility in Sunnyvale, which signifies that the risk of loss passed to PPI.[6] Furthermore, OneBeacon has introduced a document titled "Order Acknowledgment" which Haas apparently sent to PPI and which states that "Title and risk of loss pass upon delivery to freight forwarder, Buyer responsible for freight and insurance costs." It is also undisputed that PPI was to reimburse Omneon for shipping charges. The logical inference to be drawn from these limited facts, at least for the purpose of summary judgment, is that PPI did not ask Omneon to declare a higher value and pay the higher shipping costs because it did not want to be charged for them. This is not surprising since it appears that PPI already had insurance which would cover the shipment.[7] As Judge Fletcher noted in a somewhat similar dispute involving an air shipment in which the plaintiff who had insured the risk argued that the carrier had not limited its liability, "why would [the shipper] increase its costs by insuring the same cargo twice?" Read-Rite Corp v. Burlington Air Express, Ltd., 186 F.3d 1190, 1198 (9th Cir. 1999);

---

[6] John Turk, the Vice President of Omneon, submitted a declaration in support of OneBeacon's motion declaring that the terms of sale between "Omneon and PPI were FOB Omneon's dock." Thus Omneon had to "bear the expense and risk of putting [the goods] into the possession of the carrier" at Omneon's dock. See U.C.C. § 2-319(1)(a) (2008). At that point, the risk transferred from Omneon to PPI. MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1374 fn. 3 (2005).

[7] "Under the federal common law of our circuit, [in non-Carmack cases], the function served by notice of limited liability is accomplished if the shipper in fact purchases separate insurance, whether or not such notice is actually given." Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1198 (9th Cir. 1999).

1  *quoting* Travelers Indemnity Co. v. The Vessel Sam Houston, 26
2  F.3d 895, 900 (9th Cir. 1994).  Asked this question during
3  argument, counsel for OneBeacon had no persuasive response.[8]
4     Nor is OneBeacon correct that Haas was required to
5  maintain a tariff.  OneBeacon concedes that the ICC
6  Termination Act of 1995 eliminated the need for carriers to
7  maintain an approved tariff that provided for limitations on
8  liability.  49 U.S.C. §§ 13710(a)(4) & 14706(c)(1)(B).
9  Consolidated Freightways Corp. of Del. v. Travelers Ins. Co.,
10 2003 WL 22159468, *3 (N.D.Cal. 2003) *citing* Tempel Steel
11 Corp. v. Landstar Inway, Inc., 211 F.3d 1029, 1030 (7th Cir.
12 2000).  Nonetheless, without citing any authority, OneBeacon
13 argues that Congress intended for carriers to continue to use
14 "private tariffs."  (Pl.'s Supp. Memo at p.3, ln. 2.)
15     Section 14706(c)(1)(B) provides that:

> [i]f the motor carrier is not required to file its
> tariff with the Board, it shall provide under
> section 13710(a)(1) to the shipper, <u>on request of
> the shipper</u>, a written or electronic copy of the
> rate, classification, rules, and practices upon
> which any rate applicable to a shipment, or agreed
> to between the shipper and the carrier, is based.
> The copy provided by the carrier shall clearly
> state the dates of applicability of the rate,
> classification, rules, or practices.

22 28 U.S.C. § 14706(c)(1)(B) (<u>emphasis</u> <u>added</u>).  Here, there is
23 no evidence that Omneon or PPI ever requested a copy of Haas'

---

[8] OneBeacon sought to distinguish Read-Rite on the ground that PPI did not purchase spot insurance to cover this particular shipment.  Instead, the shipment was covered under a general business policy.  That does not explain why PPI would want to pay a higher shipping rate to insure the equipment, if it had already paid OneBeacon to insure the equipment under its general business policy.

8

1  rates or practices, let alone that Haas did not provide it.
2  Omneon and PPI's failure to request information regarding the
3  higher rate suggests they were not interested in paying the
4  excess valuation shipment charges.

5      Haas presented evidence that it did maintain a higher
6  shipping rate for declared value shipments, and that Omneon
7  was made aware of that rate.  Haas' comptroller, Carmen
8  Holster, provided a declaration and attached a letter sent to
9  "all customers" addressed to "Dear Valued Customer" noting
10 that it was raising its charges for declared value to "$.70
11 per $100.00 of value declared on the Haas bill of lading."
12 (Holster Dec. at ¶ 4.)  Holster declared that a copy of the
13 letter was not kept in Omneon's file, but "from a review of
14 our accounting file [she] determined that, in keeping with
15 HAAS practice and procedure, a copy of the rate charge letter
16 was sent to Omneon on January 27, 2005."  Id.[9]  Neither Omneon

---

[9] OneBeacon has moved to strike paragraph 4 of the Holster declaration and the copy of the letter attached as Exhibit B.  It argues that letter was not previously disclosed and that there was insufficient foundation laid to establish that it was sent to Omneon.  OneBeacon complains that there was not a copy of the letter in Omneon's file and that the accounting file in which Holster found the letter was not attached to the declaration.  Here, for the purpose of summary judgment, Holster's declaration sets the appropriate foundation for the court to consider the Exhibit.  See Orr v. Bank of America, 285 F.3d 767, 773 (9th Cir. 2002).  That a generic letter was not kept in individual clients' files is not surprising as it was not specifically addressed to individual clients.  Significantly, there is no evidence that Omneon did not receive the letter.  While OneBeacon may be correct that the letter should have been disclosed pursuant to Rule 26(a)(1)(A), excluding it at this stage is unwarranted.  Lesser sanctions, such as shifting the cost of any additional discovery required by the late disclosure, might have been warranted, but were not requested.  OneBeacon's motion to strike is **DENIED**.

9

nor PPI have disputed this evidence. OneBeacon is therefore not entitled to summary judgment that Haas failed to limit its liability in accordance with the Carmack Amendment.

**Reasonableness of Liability Limitation**

OneBeacon has failed to present persuasive argument or authority that Haas' limitation of liability was not "reasonable under the circumstances surrounding the transportation" as required by 49 U.S.C. section 14706(c)(1)(B). Haas' comptroller declared that a $0.50 per pound limitation on liability is the industry norm for motor carriers. (Holster Dec. at ¶ 5.) OneBeacon submitted a declaration asserting that motor carriers' limitations of liability differ greatly and there is no industry standard. Given this disagreement, and the absence of other evidence on the reasonableness of the limitation, genuine issues of material fact on the reasonableness of the limitation exist such that it is not appropriate to decide this issue on summary judgment.

**Accord and Satisfaction**

Nor is Haas entitled to summary judgment with respect to its Thirteenth Affirmative Defense of accord and satisfaction. Haas tendered a check for $88.00 as a "settlement" for the claim for the missing equipment (176 pounds of equipment at $.50 per pound) based on the limitation of liability set forth on the bill of lading. Omneon cashed the check. In California, the defense of accord and satisfactions requires a showing that there is "(1) a bona fide dispute between the parties, (2) the debtor sends a certain sum on the express

10

condition that acceptance of it will constitute full payment, and (3) the creditor so understands the transaction and accepts the sum." In re Marriage of Thompson, 41 Cal.App.4th 1049, 1058 (1996).  As noted above, Haas asserts that OneBeacon lacks standing to sue it under the Carmack Amendment because it was not a party to the bill of lading.  Haas never explains how it could have a "bonafide dispute" with a party it claims lacks standing to sue it.  Nor has Haas shown that it sent any money to PPI or that PPI accepted it.[10]  Haas' motion for summary judgment as to its thirteenth affirmative defense is **DENIED**.

For the foregoing reasons, **IT IS ORDERED** that both sides' motions for summary judgment are **DENIED**.

Dated: April 23, 2008

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\ONE BEACON\ORDER DENYING MSJ DRAFT 4.FINAL.wpd

---

[10] There is no evidence in the record as to whether Omneon transferred any of the funds it received from Haas to PPI.

11