1  JAMES ATTRIDGE [SBN NO. 124003]
   Business Trial Lawyer
2  The Fox Plaza, Suite 1204
   1390 Market Street
3  San Francisco, CA 94102
   Telephone:  (415) 552-3088
4
   Attorney for Plaintiff
5  ONEBEACON INSURANCE COMPANY

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11 ONEBEACON INSURANCE COMPANY,    | Case No: C-07-3540 BZ
12           Plaintiff(s),         | **TRIAL BRIEF OF PLAINTIFF**
                                   | **ONEBEACON INSURANCE COMPANY**
13     v.
14 HAAS INDUSTRIES, INC.,
                                   | Date:      July 1, 2008
15           Defendant(s).         | Time:      9:00 a.m.
                                   | Courtroom: Courtroom G
16

17

18

19

20

21

22

23

24

25

26

27

28

---
TRIAL BRIEF OF PLAINTIFF ONEBEACON INSURANCE COMPANY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

    A.    A Ruling Denying A Motion For Summary Judgment Does Not Constitute Law Of The Case ........................................................................... 1

    B.    The Owner Of Property Has Standing To Bring A Claim Against A Carrier Under Carmack ........................................................................................ 2

    C.    Haas Cannot Establish An Accord And Satisfaction .......................................... 3

    D.    Haas' Limitation Of Liability Is Unenforceable .................................................. 3

        (1)    Because Haas Did Not Have A Separately Negotiated Arms Length Contract 49 USC 14101(b)(1) Does Not Apply To This Shipment ........................................................................................... 4

        (2)    Haas Did Not Undertake The Steps Required To Limit Its Liability to A Sum Less Than The Carmack Amendment Requires ................... 5

        (3)    The Fact That PPI Had General Property Loss Insurance With A Cargo Component Makes No Difference ......................................... 9

III.  CONCLUSION ............................................................................................................. 12

**TABLE OF AUTHORITIES**

**CASES**

Advanced Semiconductor Materials v. Applied Materials Inc.
    922 F.Supp. 1439 (N.D. Cal. 1996) ............................................................................ 2

Atlantic Mutual Insurance v. Yasutomi Warehousing
    326 F.Supp. 2d 1123 (C.D. Cal. 2004) ..................................................................... 6, 7

Carman Tool & Abrasives, Inc. v. Evergreen Lines,
    871 F.2d 897 (9th Cir. 1989) .................................................................................... 10

Chandler v. Aero Mayflower Transit Company
    374 F.2d 129 (4th Cir. 1967) ...................................................................................... 4

Delaware L&W. R. Co. v. United States
    123 F.Supp. 579 (S.D. N.Y. 1954) ............................................................................. 2

Eckert-Fair Construction Co. v. Capitol Steel & Iron Co.
    178 F.2d 338 (5th Cir. 1949) ...................................................................................... 3

Flying Tiger Line v. Pinto Trucking Service
    517 F.Supp. 1108 (E.D. Pa. 1981) .............................................................................. 4

Fulfillment Services v. United Parcel Service, Inc.,
    07-15006 (9th Cir. 2008) ............................................................................................ 3

Harrah v. Minnesota Mining and Manufacturing Co.
    809 F.Supp 313 (D. N.J. 1992) .................................................................................. 3

Hughes Aircraft v. North American Van Lines,
    970 F.2d 609 (9th Cir. 1992) ............................................................................... 5, 7, 8

In Re: Marriage of Thompson
    41 Cal.App.4th 1049 (1966) ....................................................................................... 3

IPEC Planar v. Mach 1 Air Services
    129 F.Supp. 2d 1265 (D. Ariz. 2000) ...................................................................... 6, 7

Lovette v. General Motors
    975 F.2d 518 (8th Cir. 1992) ....................................................................................... 2

McGaughey v. City of Chicago
    690 F.Supp. 707 (N.D. Ill. 1988) ................................................................................ 2

Mid American Energy Co. v. Start Enterprises, Inc.,
    534 F.Supp.2d 930 (S.D. Iowa 2008) ......................................................................... 7

New York, New Haven and Hartford R.R. v. Nothnagel
    346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) .................................................... 5

Preasseau v. Prudential Insurance Co. of America
    591 F.2d 74 (9th Cir. 1979) ........................................................................................ 1

Read-Rite Corporation v. Burlington Air Express, Ltd.
  186 F.3d 1190 (9th Cir. 1999) .................................................................... passim

Rohner Gehrig Co., Inc. v. Tri-State Motor Transit
  950 F.2d 1079 (5th Cir. 1992) ............................................................................ 7

Sam L. Majors Jewelers v. ABX, Inc.
  117 F.3d 922 (5th Cir. 1992) .............................................................................. 9

Sassy Doll Creations v. Watkins Motor Lines
  331 F.3d 834 (11th Cir. 2003) ............................................................................ 7

Schweitzer Aircraft Corp. v. Landstar Ranger, Inc.
  114 F.Supp. 2d 199 (W.D. N.Y. 2000) ............................................................... 4

Shielding International v. Oak Harbor Freight Lines
  442 F.Supp.2d 1092 (D. Or. 2006) ..................................................................... 7

Tempel Steel v. Landstar Inway
  211 F.3d 1029 (7th Cir. 2000) ........................................................................ 6, 7

Trustees of Indiana University v. Aetna Cas. & Surety Co.
  920 F.2d 429 (7th Cir. 1990) .............................................................................. 2

Vision Air Flight Service v. M/V National Pride
  155 F.3d 1165 (9th Cir. 1998) .......................................................................... 10

Wright v. Cayan
  642 F.Supp. 947 (N.d. N.Y. 1986) ..................................................................... 2

I. **INTRODUCTION**

In a sense this is less a trial than a motion for reconsideration with witnesses. On April 2, 2008, cross-motions for summary judgment were heard as to Haas Industries' claimed defenses of limitation of liability and accord and satisfaction. The Court also raised *sua sponte* the issue of OneBeacon's standing, given that its insured Professional Products, Inc. (PPI) was not a named party to the bill of lading. The Court invited supplemental briefing but would not accept supplemental declarations. On April 24, 2008, the cross-motions were denied.

OneBeacon is confident that this further briefing, testimony from Connie Siller of Omneon Video Graphics (Omneon) and Denny Bell of PPI, as well as excerpts from the record in Read-Rite Corporation v. Burlington Air Express, Ltd. 186 F.3d 1190 (9th Cir. 1999) will convince the Court that none of the defendant's affirmative defenses are proved.

Defendant Haas Industries, Inc. (Haas) has acknowledged that plaintiff has, save for the standing issue, established its case and that judgment should be entered in the amount requested unless an affirmative defense is established.

Defendant has expressed its intention to contend that all or part of this Court's April 24, 2008 Order are somehow law of the case. OneBeacon will dispense with that argument at the outset.

II. **ARGUMENT**

   A. **A Ruling Denying A Motion For Summary Judgment Does Not Constitute Law Of The Case**

Haas intends to contend that this Court's order of April 24, 2008 triggers issue foreclosure. All controlling authorities hold the exact opposite:

> An order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the Court at any time.

Preasseau v. Prudential Insurance Co. of America 591 F.2d 74, 79 (9th Cir. 1979) and:

> Applied now argues that that ruling by this court is "law of the case." The court rejects Applied's argument because statements made in an order denying a motion for summary judgment are not issues deemed established for trial.

1  Advanced Semiconductor Materials v. Applied Materials Inc. 922 F.Supp. 1439, 1448 (N.D. Cal.
2  1996)[1]

3  In fact, Northern California Local Rule 56-3 specifically provides:

> Statements contained in an order of the court denying a motion for summary judgment or summary adjudication shall not constitute issues deemed established for purposes of the trial of the case, unless the court so specifies.

Local Rule 56-3

### B. The Owner Of Property Has Standing To Bring A Claim Against A Carrier Under Carmack

Haas' standing argument and its accord and satisfaction defense are intertwined. There is no denying that PPI was the rightful owner of the goods when they were lost or stolen in transit. The Court has raised the issue of whether PPI has standing to sue under the Carmack Amendment 49 USC 14706 given that it is not a party to the bill of lading contract.

Logic dictates that while the owner of cargo might not be a party to the bill of lading contract, that he nevertheless has an interest in its performance. Moreover, while a Carmack Amendment action sounds in contract, it is not in and of itself a contract action, but a statutory claim which is *sui generis* because it is designed to accommodate a unique commercial transaction. That is why it has been held:

> "Thus, it having been conceded that the United States was the owner of the machinery, it may sue for damage thereto even though it was not named in the bill of lading. (Citations omitted).

Delaware L.&W. R. Co. v. United States 123 F.Supp. 579, 581 (S.D. N.Y. 1954). And:

> This Court must therefore consider whether plaintiff has any standing to sue under that act. Cases interpreting the Act have confined the right to sue to shippers ... or consigners ... holders of the bill of lading issued by the carrier ... or persons beneficially interested in the shipment ... buyers or consignees ... or assignees thereof. (Citations omitted).

---

[1] Accord: Lovette v. General Motors 975 F.2d 518, 522 (8th Cir. 1992); Trustees of Indiana University v. Aetna Cas. & Surety Co. 920 F.2d 429, 435 (7th Cir. 1990); Wright v. Cayan 642 F.Supp. 947-948 (N.d. N.Y. 1986) (affd. 817 F.2d 999); McGaughey v. City of Chicago 690 F.Supp. 707-708 (N.D. Ill. 1988).

Harrah v. Minnesota Mining and Manufacturing Co. 809 F.Supp 313, 318 (D. N.J. 1992)

The Court has rightfully raised the point that a carrier might be loath to settle claims if it were dealing with a phantom party. Both the Code of Federal Regulations and the National Motor Freight Classification[2] (NMFC) anticipate this problem and provide a degree of protection.

NMFC Item 300110 anticipates:

> "When a claimant does not appear from the supporting documents to be an interested party, carrier will require any necessary written assignment or other proof to determine the plaintiff is the proper party to receive any claim payment."

(Exhibit R)  See also: 49 CFR 1005.4

The only reason Omneon filed this claim is because Haas erroneously insisted that Omneon was the only party allowed by law to do so. Given that it only paid $88.00 Haas had no incentive to insist on any protective certification. In any event, when PPI filed its claim directly, Haas could have insisted on certified proof to protect itself before adjusting the claim.

### C.    Haas Cannot Establish An Accord And Satisfaction

OneBeacon has no idea how Haas plans to go about establishing that its $88.00 payment to Omneon constitutes an accord and satisfaction. The only reason Haas sent a check to Omneon is because it was, and still is, of the erroneous opinion PPI had no right to file a claim in the first place.

At this stage, OneBeacon can do little more than re-alert the Court to Eckert-Fair Construction Co. v. Capitol Steel & Iron Co. 178 F.2d 338, 340 (5th Cir. 1949) and In Re: Marriage of Thompson 41 Cal.App.4th 1049, 1058 (1966).

### D.    Haas' Limitation Of Liability Is Unenforceable

As the Court has noted in its earlier order, limitation of liability is an affirmative defense and Haas has the burden of proving it. Schweitzer Aircraft Corp. v. Landstar Ranger, Inc. 114

---

[2] The National Motor Freight Classification is an industry standard guide exempt from the anti-trust laws under 49 U.S.C. 13703. Fulfillment Services v. United Parcel Service, Inc., 07-15006 (9th Cir. 2008) CDOS p. 8389-8390. (Exhibit R)

F.Supp. 2d 199, 201 (W.D. N.Y. 2000). Moreover, because the public policy as contained in the Carmack Amendment is to hold carriers liable for the actual value of the goods shipped, arrangements attempting to limit liability will be strictly construed against the carrier. <u>Chandler v. Aero Mayflower Transit Company</u> 374 F.2d 129, 135 (4th Cir. 1967); <u>Flying Tiger Line v. Pinto Trucking Service</u> 517 F.Supp. 1108, 1112 (E.D. Pa. 1981)

### (1) Because Haas Did Not Have A Separately Negotiated Arms Length Contract 49 USC 14101(b)(1) Does Not Apply To This Shipment

In its April 24, 2008 Order, the Court began its analysis of the Carmack Amendment by assuming that the law governing limitations of liability derives from 49 USC 14101(b)(1). It does not. It derives from the Carmack Amendment itself. 14706(c)(1)(A) and (B):

> c) Special rules. —
>
> (1) Motor carriers.—
>
> (A) Shipper waiver.—Subject to the provisions of subparagraph (B), a carrier providing transportation or service … may … establish …rates under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.
>
> (B) Carrier notification.—If the motor carrier is not required to file its tariff with the Board, it shall provide under section 13710(a)(1) to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment or agreed to between the shipper and the carrier, is based. The copy provided by the carrier shall clearly state the dates of applicability of the rate, classification, rules, or practices.

49 USC 14706(c)

Section 14101(b) was enacted as part of the Interstate Commerce Commission Termination Act (Pub. Law 104-88 1995) (ICTTA) and provides that a shipper and a carrier, in a separate contract for specified services under specified rates and conditions can expressly waive in writing any rights or remedies provided in the entirety of the Motor Carrier Act. This section was enacted to facilitate the shift from a predominantly common carriage regime to a contract carriage regime, where separately negotiated arms length master contracts trump the bill of

1  lading.

2  The Congressional intent when enacting 49 USC 14101(b) is clear:

3  (the section) would allow carriers to enter contracts for specific shipments under which both parties may waive their rights and remedies.

5  U.S. Code and Administrative News 104th Cong. 1st Sess. p. 900 (1995)

6  That is not the circumstance here. There was no ongoing master agreement between Haas and either PPI or Omneon. In a simple bill of lading scenario, like that here, the starting point is the Carmack Amendment itself 49 USC 14706(c)(1)(A) and (B).

**(2)    Haas Did Not Undertake The Steps Required To Limit Its Liability to A Sum Less Than The Carmack Amendment Requires**

As noted above, the starting point is the Carmack Amendment which specifically states that the plaintiff is entitled to recover the actual value of property lost. 49 USC 14706(a).

Beginning in New York, New Haven and Hartford R.R. v. Nothnagel 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) Courts prescribed a rigid four part test required of every Carmack carrier seeking to assert a limitation of liability under 14706(c)(1)(A) and (B). The most recent Ninth Circuit version of the test is:

Before a carrier's attempt to limit its liability will be effective, the carrier must (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement. The carrier has the burden of proving that it has complied with these requirements.

Hughes Aircraft v. North American Van Lines, 970 F.2d 609, 611-612 (9th Cir. 1992).

ICCTA eliminated the tariff filing requirement which altered the nature of the first prong of the test. Now under 49 USC 14706 carriers shall maintain "The rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier is based." The carrier must provide a copy if the shipper requests it.

The "rate, classification, rules and practices upon which any rate applicable to a shipment … is based" is still referred to in the industry as a tariff. Tempel Steel v. Landstar Inway 211

1  F.3d 1029, 1030 (7th Cir. 2000)  The use of the word tariff in section 14706(c)(1)(B) indicates
2  that "rates, classifications, rules and practices" and "tariff" are synonymous.
3      In fact, Haas itself liberally uses the word tariff in its shipping documents which state
4  among other things:

> 2.  **Carrier Tariffs Govern**: It is mutually agreed that the shipment described accepted on the date hereof … subject to governing **tariffs** in effect as of the date hereof … and are hereby incorporated into and made part of this contract.
>
> 3.  Liability Limits:  Declared value is agreed and understood to be not more than 50¢ per pound or $50.00 whichever is lesser, unless a higher value is declared herein and **applicable charges paid thereon**…

10     Haas also posts something called "Conditions of Contract of Carriage" on its website, but
11 neither that document, nor the website itself are referenced anywhere on the bill of lading.
12 Paragraph 8 of that document also states the 50¢/$50.00 limitation of liability, and that "Declared
13 values for carriage in excess of $0.50 per pound, per piece, shall be subject to an excess
14 valuation charge."  It also says "**this limitation is subject to provisions as published in Haas**
15 **Industries governing tariffs**."  (Exs H and I)
16     The overwhelming weight of authority interpreting the Carmack Amendment since the
17 passage of ICCTA requires that in order to limit its liability the carrier must publish either in its
18 bill of lading or the documents incorporated by referenced therein (universally referred to as
19 tariffs) a rate schedule which advises what the charges will be in each instance.
20     Contrary to the Court's earlier understanding, OneBeacon does not contend that the
21 excess valuation charge Haas requires in exchange for full value <u>must</u> appear on the bill of
22 lading.
23     Rather, it suggests that the easiest way to establish a limitation is to state what the excess
24 valuation charge will be on the bill of lading itself, just as the carriers did in <u>Atlantic Mutual</u>
25 <u>Insurance v. Yasutomi Warehousing</u> 326 F.Supp. 2d 1123, 1124 (C.D. Cal. 2004), and <u>IPEC</u>
26 <u>Planar v. Mach 1 Air Services</u> 129 F.Supp. 2d 1265, 1272 (D. Ariz. 2000)  Haas would have a
27 better argument if it did so.  It didn't.
28     OneBeacon asks the Court to re-examine the logic of footnote four of its April 24, 2008

1  Order denying motions for summary judgment that this is not a commercially reasonable step to
2  expect because it could create confusion if Haas had to reprint and redistribute new forms
3  whenever it changed its valuation charge.  Neither Yasutomi Warehousing nor Mach 1 Air
4  Service, Inc. seemed to encounter such difficulty.  And sending your customers a stack of new
5  forms with a letter telling them to throw out the old ones is no more confusing than throwing out
6  last year's phonebook.
7        As for the impact of the repeal of the tariff filing requirement, it has not diminished the
8  four-part Hughes Aircraft test:

> As it concerns this case, the most that can be said about the latest
> version of the statute is that a carrier is now required to provide a
> shipper with the carriers' tariff if the shipper requests it, instead of
> the shipper filing its tariff with the now-defunct ICC.

12  Sassy Doll Creations v. Watkins Motor Lines 331 F.3d 834, 841 (11th Cir. 2003).  And:

> Thus, post-TIRRA and post-ICCTA, courts continue to adhere to
> the Hughes test to determine if a carrier has limited its liability.
> Moreover, in applying the Hughes test, the Court is mindful that
> "Congress expressed a public policy against limitation of liability
> by carriers … [and that] absolute prohibition … was softened ever
> so slightly … [to admit] a narrow exception[,]" and like any
> exception to public policy, "the one wrought by the Carmack
> Amendment must be construed narrowly." Rohner Gehrig Co.,
> Inc. v. Tri-State Motor Transit 950 F.2d 1079, 1083 (5th Cir. 1992)

18  Mid American Energy Co. v. Start Enterprises, Inc., 534 F.Supp.2d 930, 935 (S.D. Iowa 2008)
19  Accord:  Shielding International v. Oak Harbor Freight Lines 442 F.Supp.2d 1092 (D. Or. 2006)
20        Therefore, carriers who do not wish to state the valuation charge on their bills of lading
21  instead at least must state those charges within the documents incorporated therein by reference.
22  Even under the less rigid standard applied to air carriers the same rule holds:

> Limited liability provisions are *prima facie* valid if the face of the
> contract … recites the liability limitation and the means to avoid
> it."

25  Read Rite, supra, p. 1198.
26        These are commonly referred to in the industry as tariffs even though they are no longer
27  filed with the government.  Tempel Steel v. Landstar Inway, Inc. 211 F.3d 1029, 1030 (7th Cir.
28  2000).  Haas also uses the term tariff liberally in its shipment documents.  UNLIKE EVERY

1  DEFENDANT IN EVERY CASE CITED TO THE COURT, Haas is attempting to establish that
2  its limitation is enforceable despite that fact it is not incorporated by reference into the bill of
3  lading contract.[3] It claims to have successfully jumped through the hoops because it sent a "Dear
4  Customer" letter dated January 12, 2005 (Ex. D) advising its ongoing clientele that it was raising
5  the rate.
6       The "Dear Customer" letter is not incorporated by reference into the bill of lading
7  contract.
8       It cannot be proved whether the relevant personnel at Omneon received it. It most
9  certainly cannot be proved that anyone at PPI ever saw it because PPI never did business with
10 Haas before.
11      And it is indisputable that it is not part of the Haas tariffs which Haas incorporates by
12 reference into the bill of lading contract.
13      Simply put, how can Haas claim to have "obtained the shipper's agreement to his choice
14 of carrier liability limit" (Hughes prong 3) or "issued a bill of lading that reflects such
15 agreement." (Hughes prong 4) or "offered a fair opportunity to purchase greater liability
16 coverage" (Read-Rite prong 2) when the only document stating what the extra charges would be
17 are not part of the shipping documents which are signed?
18      Moreover, PPI had no reason to believe the freight was moving at anything other than
19 actual value. Consistent with Carmack, trucker bills of lading are supposed to assume full
20 liability and allow a shipper to opt for a discount in exchange for a lower rate. Here, Haas
21 arrogates to itself a lower liability and charges more if the shipper wants full coverage. That's of
22 dubious legality.
23      It is crucial to appreciate that under the Carmack Amendment the baseline for the carrier's
24 liability is "the actual loss or injury to the property." No such language has ever governed in
25 airfreight. See: Sam L. Majors Jewelers, p. 9, infra. Therefore, in Carmack movements the

---

[3] In the Read-Rite case, defendant Burlington not only maintained a tariff, it was a tariff specifically written for Read-Rite. (Exhibit U)

1  amount owed by the carrier for damage is assumed to be the actual value. A shipper who is
2  willing to gamble can opt to pay <u>less</u> in exchange for lower charges. With airfreight, the carrier
3  is free to set the level as low as it wishes and then invite the shipper to pay <u>more</u> in exchange for
4  higher coverage.

   In 1919 the Interstate Commerce Commission prescribed the Uniform Domestic Straight Bill of Lading In Re: Bills of Lading 52 I.C.C. 671 (1919) which featured a block where a shipper could declare a lower value. It has remained the industry standard ever since. (Exhibit R.)[4] Contrary to the opinion expressed by Ms. Holster, a $50.00/.50¢ lb limitation is not an industry standard under Carmack.

   This is important because it undermines any argument that PPI <u>chose</u> to have its freight transported at minimum value. PPI had every reason to assume it was traveling at actual value because that's what the law says. The conundrum of this case is the fact that Haas, whether venally or not, has cobbled together an incoherent set of shipping documents, borrowing a little from Carmack and a little from the common law of airfreight to give itself the best of all worlds. It can't.

   (3)   **The Fact That PPI Had General Property Loss Insurance With A Cargo Component Makes No Difference**

   Right off the bat, the <u>Read-Rite</u> decision which the Court earlier found persuasive is easily distinguishable. <u>Read-Rite</u> applied federal common law, which applies to air carriers, which is quite a different kettle of fish than a Carmack case. The best place to start is with <u>Read-Rite</u> itself.

   The Court in <u>Read-Rite</u> expressly endorsed the historical canvas of federal common law as stated in <u>Sam L. Majors Jewelers v. ABX, Inc.</u> 117 F.3d 922 (5th Cir. 1992); <u>Read-Rite</u>, p. 1195.

---

[4] The only exception to this regime is where the carrier has in its terms of contract an "inadvertence clause" whereby failure to declare a value defaults to the lowest rate and the lowest liability. This exception was carved out pursuant to the application of IBM which was having problems finding carriers willing to haul mainframes. Released Rates Order No MC 894 353 I.C.C. 661 (1977).

The <u>Majors</u> court underscored the basic distinction between the law governing air carriers and those governing surface carriers:

> "Significantly, the other major interstate commerce acts included a provision that imposed liability on carriers for loss or injury to goods transported and provided for private civil actions to recover. The Federal Aviation Act, however, failed to include such a provision. Nonetheless, applying federal common law, Federal courts found that civil actions against air carriers for lost or damaged goods arose under federal law.

*Id.* 927-928.

It is also clear from a critical reading of <u>Read-Rite</u> and the precedents upon which it relies that <u>Read-Rite</u> has purchased spot insurance in connection with a one of a kind very expensive purchase:

> "<u>Read-Rite</u> did, in fact, separately purchase insurance covering damage <u>to the cluster sputter</u> during transit.

*Id.*, p. 1199.[5]

> "Vision declined to (opt for higher liability) and instead insured <u>the refuelers</u> with an independent insurance company

<u>Vision Air Flight Service v. M/V National Pride</u> 155 F.3d 1165, 1167 (9th Cir. 1998)

> "it insured the <u>shipment here</u>"

<u>Carman Tool & Abrasives, Inc. v. Evergreen Lines</u>, 871 F.2d 897, 901 (9th Cir. 1989)

PPI did no such thing. It had $420,000 of miscellaneous transit coverage for which it paid a premium of only $1,500. (That $420,000 represents the approximate value of a truckload of product, its worst case scenario.) PPI's policy covered the transport of product, not the transport of a major capital purchase as in <u>Read-Rite</u>, <u>Vision Air</u> and <u>Carmen Tools</u>.

Had PPI purchased a cluster sputter worth $1,240,789.40 and wanted it insured in transit, it would have had to make a decision to buy $800,000 of spot insurance or declare a $1.25 million value. But it didn't.

Paying an excess valuation charge <u>and</u> buying spot insurance is admittedly dumb.

---

[5] The cargo in <u>Read-Rite</u> had a declared customs value of $1,240,789.40 (Exhibit T)

1 | Despite the undersigned's flat-footedness at the hearing of April 2, 2008, there are plenty of
2 | good reasons why a manufacturer would opt to move its product at full value while also
3 | maintaining a cargo policy.

4 |     By reserving recourse against the truckers instead of only its insurer, PPI only has to pay
5 | $1,500 for cargo insurance.

6 |     A rational businessperson would rather collect from the trucker directly than file an
7 | insurance claim and run the risk of a higher premium. Mr. Bell of PPI will testify that it is the
8 | policy of PPI to pay for full value coverage and only turn the matter over to OneBeacon, when
9 | like here, the carrier refuses to pay. The cargo component of PPI's General Liability Policy
10 | features coverage up to $420,000 and a premium of $1,500. This is a small portion of the overall
11 | policy of $23,000,000, with a premium of $89,000. It is worth it to PPI to pay higher freight
12 | rates in exchange for full value coverage because it does not wish to develop a claims history
13 | with its insurer that will inflate the premium on its overall policy.

14 |     A second reason that PPI and similar companies would choose to carry cargo insurance
15 | while declining a release value discount is to save on litigation costs when a claim is improperly
16 | denied. Turning the matter over to your insurer to do the dirty work may ultimately be cheaper
17 | than turning it over to your lawyer.

18 |     Lastly, cargo insurance is a hedge against the misfortune of filing a claim with a trucker
19 | who has inadequate insurance of his own, whose insurance company declines coverage based
20 | upon a policy exclusion (i.e. unattended vehicle) or who shuts down and reopens as a new entity
21 | a few days later.

22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

III. **CONCLUSION**

In order to limit its liability and avoid the statutory mandate of Carmack, a carrier must "jump through hoops." Haas didn't.

                                          Respectfully submitted

DATED: June 16, 2008               JAMES ATTRIDGE

                               By:      */s/ James Attridge*
                                     JAMES ATTRIDGE
                                       Attorney for Plaintiff
                                       ONEBEACON INSURANCE COMPANY