UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ONEBEACON INSURANCE COMPANY, | ) | |
| Plaintiff(s), | ) | No.  C07-3540 BZ |
| v. | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| HAAS INDUSTRIES, INC, | ) | |
| Defendant(s). | ) | |

OneBeacon Insurance Company ("OneBeacon") sued Haas Industries, Inc. ("Haas") under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, to recover the cost of lost electronic equipment which Haas shipped. Pursuant to 28 U.S.C. § 636(c), both parties have consented to my jurisdiction for all proceedings, including entry of final judgment.

The trial took place on July 1, 2008.  Having considered and weighed the parties' undisputed facts and the evidence adduced at trial, and having assessed the credibility of the witnesses, I now make these findings of fact and conclusions of law as required by Federal of Civil Procedure 52(a).

1

**FINDINGS OF FACT**

1. Professional Products, Inc. ("PPI") purchased electronic equipment from Omneon Video Networks ("Omneon"). The equipment was to be shipped to the City University of New York ("CUNY"). Omneon contracted with Haas to transport the equipment. Omneon executed and Haas issued a bill of lading for the transportation, which lists the date of shipment as June 30, 2005.

2. At the relevant time, Haas was a licensed motor contract carrier and property freight forwarder. It did not have authority as a common carrier or broker.

3. The equipment was shipped FOB Omneon's dock, which means the risk of loss shifted to PPI once Omneon tendered the equipment to Haas at its dock.

4. When the shipment was delivered to CUNY, it was short equipment valued at $105,647.00.

5. Haas' bill of lading sets forth on its face page a conspicuous capitalized warning:

> DECLARED VALUE AGREED AND UNDERSTOOD TO BE NOT MORE THAN $.50 PER POUND PER PIECE, OR $50.00 WHICHEVER IS HIGHER UNLESS HIGHER DECLARED VALUE DECLARED AND CHARGES PAID. FREIGHT BILL SUBJECT TO CONDITIONS SET FORTH ON REVERSE SIDE.

To the left of the warning is a box marked "DECLARED VALUE FOR CARRIER $" with a blank space provided to insert the value of the shipment. The Conditions of Contract Carriage on the reverse of the bill of lading repeat the $0.50 per lb. liability limitation "in the absence of a higher declared value for carriage" and state that "[d]eclared values for carriage in

2

excess of $0.50 per pound, per piece, shall be subject to an excess valuation charge."

    6.   Beneath the declared value space is a space for "SHIPPER'S SIGNATURE," with the additional language in the signature box "FREIGHT BILL SUBJECT TO CONDITIONS SET FORTH ON REVERSE SIDE."  Haas placed the shipper's signature space below the declared value space in order to draw the shippers' attention to its limitation of liability.

    7.   Shippers such as Omneon held blank Haas bill of lading forms and filled in relevant information for each shipment. Omneon did not declare a value for the shipment at issue, but did sign the bill of lading in the space provided beneath the declared value space.  PPI did not ask Omneon to declare a higher value for its shipment.

    8.   Effective January 17, 2005, Haas' additional freight charge for declared value cargo increased to $0.70 per each $100 of the value declared.  This was communicated to Haas' customers, including Omneon, by means of an explanatory "Dear Valued Customer" letter which was included with all shipment invoices sent out in January of 2005.  Omneon received notice of the additional freight charge.

    9.   The invoice containing the "Dear Valued Customer" letter was referenced to Connie Siller.  Ms. Siller is the Order Fulfilment Coordinator at Omneon, is responsible for coordinating all of its shipments and is the person to whom the letter should have been sent.  Ms. Siller testified she never saw the "Dear Valued Customer" letter, apparently because mail was opened by the accounting department.

    10.   If any of Haas' customers requested information regarding the additional freight charge in order to declare a value in excess of the limitation set forth on the bill of lading, Haas would communicate such information to the customer.

    11.   In 2005, Haas arranged 156 shipments on behalf of Omneon prior to the shipments in suit and 39 thereafter. On none of these 2005 shipments did Omneon list a declared value in excess of the $.50 per lb. or $50 limitation set forth on the bill of lading. In August 2005, Omneon inquired as to Haas' additional freight charge for declared value shipments at the behest of a customer.

    12.   PPI filed a claim with its general property loss insurer OneBeacon. OneBeacon paid the claim. OneBeacon is the subrogee of PPI's claim for $104,617.00 of lost equipment. PPI was not a party to the bill of lading; nor does its name appear anywhere on the bill of lading.

    13.   At PPI's request, Omneon made a claim in its name against Haas for the loss. The weight of the lost portion of the equipment was 176 pounds. Because no other value had been declared or concomitant freight charges paid, Haas adjusted Omneon's claim based on the weight of the lost goods and Haas' limitation of $.50 per pound, in the total amount of $88. Haas forwarded its $88 check to Omneon and Omneon cashed the check. There was no evidence as to whether Omneon forwarded this amount to PPI. PPI has not sued Omneon.

### CONCLUSIONS OF LAW

    14.   This matter is governed by the Carmack Amendment, 49

4

1  U.S.C. § 14706.  The legal issues in dispute are:  whether
2  OneBeacon has standing to bring this action since it was not a
3  party to the bill of lading and did not negotiate or arrange
4  shipment with Haas; whether Haas effectively limited its
5  liability under the Carmack Amendment; and whether Haas has
6  established the defense of accord and satisfaction.
7       15.  The Carmack Amendment provides that a carrier is
8  "liable to the person entitled to recover under the receipt or
9  bill of lading."  49 U.S.C. § 14706(a)(I).  PPI was not listed
10 on the bill of lading as the owner of the equipment; nor did it
11 contract with Haas to ship the equipment.
12      16.  OneBeacon relies on cases which have either assumed
13 that the owner of goods may sue under the Carmack Amendment
14 even if not named in the bill of lading, or have so stated
15 generally, without much persuasive analysis, or are otherwise
16 distinguishable.  See e.g. Spray-Tek, Inc. v. Robbins Motor
17 Transp., Inc., 426 F. Supp. 2d 875, 883 (W.D. Wis.
18 2006)(plaintiff was consignee as well as owner); Banos v.
19 Eckerd Corp., 997 F. Supp. 756, 762, (E.D. La. 1998)(consumer
20 permitted to sue store that shipped his photographs for
21 processing and carrier that lost them because plaintiff was
22 found to be "person named in the bill of lading [presumably the
23 Vendor Return Form] as the person for whom the goods have been
24 received for shipment,," at 762); Delaware, L.& W. R. Co. v.
25 United States, 123 F. Supp. 579, 581 (S.D.N.Y. 1954)(allowing
26 U.S., who had been sued by carrier for unpaid freight charges,
27 to counterclaim for damage to goods it owned).  The court has
28 not found a single case decided after the relevant language of

5

the Carmack Amendment was amended which has explained why an owner of goods, who was not listed on, or a party to, the bill of lading, did not possess the bill of lading, did not negotiate with the carrier, and was not the receiving party of the shipment, has standing to sue for cargo loss under the Carmack Amendment.  Plaintiff's interpretation would largely render the statute's limitation on standing nugatory.

17.  Considerations of judicial economy suggest that the owner of the goods should be able to sue the carrier directly, rather than suing the consignor or shipper who would then have to sue the carrier.  Judicial economy can be easily satisfied if such an owner obtains an assignment of the shipper's Carmack rights against the carrier.

18.  A weakness in OneBeacon's standing argument is illustrated by Haas' accord and satisfaction defense.  After the loss, Omneon presented a claim to Haas.  Haas replied that its liability was limited by the bill of lading to $88.00 and tendered Omneon a check in that amount.  Omneon cashed the check, creating an accord and satisfaction between Haas and Omneon.  Haas contends this created an accord and satisfaction with PPI and OneBeacon.

19.  OneBeacon has steadfastly insisted that Omneon had no authority to enter into an accord and satisfaction that binds PPI since it was not PPI's agent.  While Ms. Siller testified Omneon presented a claim to Haas at PPI's request, I agree with PPI that Haas presented insufficient evidence to establish that Omneon was PPI's agent for the purpose of reaching an accord and satisfaction between Haas and PPI.

6

20. Allowing someone not a party to the bill of lading to sue the carrier after it has reached an accord and satisfaction with the shipper would discourage carriers from settling claims. It would also make it possible for the carrier to face multiple suits for the same loss.

21. I therefore conclude that OneBeacon lacks standing to sue Haas under the Carmack Amendment and that Haas has failed to establish that it reached an accord and satisfaction with PPI.

22. Under the Carmack Amendment, a carrier is liable "for the actual loss or injury to the property" it transports. 49 U.S.C. § 14706(a)(1). A carrier can, however, limit its liability. The special rules under the Amendment for motor carriers provide that:

> (A) Shipper waiver.--Subject to the provisions of subparagraph (B), **a carrier providing transportation** or service subject to jurisdiction under subchapter I or III of chapter 135 **may**, subject to the provisions of this chapter (including with respect to a motor carrier, the requirements of section 13710(a)), **establish rates for the transportation of property** (other than household goods described in section 13102(10)(A)) **under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper** if that value would be reasonable under the circumstances surrounding the transportation[1].
>
> (B) Carrier notification.--If **the motor carrier** is not required to file its tariff with the Board, **it shall provide** under section 13710(a)(1) **to the shipper**, <u>on request of the shipper</u>, **a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the**

---

[1] OneBeacon has dropped its claim that the limitation of liability was unreasonable.

7

```
         shipper and the carrier, is based. The copy
         provided by the carrier shall clearly state the
         dates of applicability of the rate,
         classification, rules, or practices.
```

49 U.S.C. §§ 14706(c)(1)(A)-(B)(*emphasis* added).

    23.   To limit its liability under the Carmack Amendment, the carrier must:

```
         (1) obtain an agreement with the shipper based on a
         choice of liability; (2) give the shipper a
         reasonable opportunity to choose between levels of
         liability; and (3) issue a bill of lading prior to
         shipment.
```

Atl. Mut. Ins. Co. v. Yasutomi Warehousing and Distrib., Inc., 326 F. Supp. 2d 1123, 1126 (C.D. Cal. 2004).

    24.   Haas has the ultimate burden of showing it has limited its liability. Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F. Supp. 2d 199, 201 (W.D.N.Y 2000).

    25.   Haas has established each of these factors. Haas gave Omneon the option of declaring a higher value for the shipment and paying the concomitant freight charge. No evidence was presented that Haas would not have insured the shipment for its full value had Omneon so requested and been willing to pay the freight charge. When Omneon signed the bill of lading without declaring the higher value, it agreed that the value would be no more than 50 cents per pound or $50.00 whichever is higher. It is undisputed that Haas issued a bill of lading prior to the shipment.

    26.   Plaintiff mistakenly argues that the Carmack Amendment requires all shipments to proceed at full value

///

///

8

1  unless the shipper declares a lower value.[2]  Nothing in the
2  Carmack Amendment states that the parties can only agree to a
3  value less than full value.  To the contrary, the statute says
4  that the liability of the carrier can be limited by agreement
5  not that it can be lowered by agreement.  49 U.S.C.
6  §§ 14706(c)(1)(A)-(B).

7      27.  A number of cases have approved limitation of
8  liability agreements whose form provided that the parties
9  agreed to a stated value unless the shipper declared a higher
10 value.  See e.g., Hath v. Allegheny Color Corp., 369 F.Supp.2d
11 1116 (D. Ariz. 2005); Schweitzer Aircraft Corp. v. Landston
12 Ranger, Inc., 114 F. Supp. 2d 199 (W.D.N.Y. 2000); Jackson v.
13 Brook Ledge, Inc., 991 F. Supp 640 (E.D. Ky. 1997).

14     28.  The ICC Termination Act of 1995 eliminated the need
15 for carriers to file an approved tariff that provided for
16 limitations on liability and plaintiff does not claim
17 otherwise.  49 U.S.C. §§ 13710(a)(4), 14706(c)(1)(B); Consol.
18 Freightways Corp. of Del. v. Travelers Ins. Co., 2003 WL
19 22159468, *3 (N.D. Cal. 2003)(citing Tempel Steel Corp. v.
20 Landstar Inway, Inc., 211 F.3d 1029, 1030 (7th Cir. 2000).
21 Haas therefore complied with Section 14706 (c)(1)(B) by making

---

[2]  Neither Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179 (3d Cir. 2006), nor Sompo Japan Ins. Co. of America v. Union Pac. R. Co., 456 F.3d 54 (2d Cir. 2006) support this argument.  In neither of these cases did the carrier give the shipper the option of declaring the full value of the shipment.  In fact, Emerson cites to Nat'l Small Shipments Traffic Conference, Inc. v. United States, 887 F.2d 443, 444 (3d Cir. 1989), stating that a shipper will be insured at the lowest rate permitted if the shipper leaves the declared value box blank when given the option of declaring a higher value.  451 F.3d at 188.

9

1 available at the request of the shipper a list of the rates it
2 charged for declared value shipments.[3]
3    29.   That neither Omneon nor PPI declared a higher value
4 is not surprising since PPI already had insurance which would
5 cover the shipment.  OneBeacon produced no evidence to explain
6 "[w]hy would [the shipper] increase its costs by insuring the
7 same cargo twice?"  <u>Read-Rite Corp v. Burlington Air Express,</u>
8 <u>Ltd.</u>, 186 F.3d 1190, 1198 (9th Cir. 1999)(*quoting* <u>Travelers</u>
9 <u>Indemnity Co. v. The Vessel Sam Houston</u>, 26 F.3d 895, 900 (9th
10 Cir. 1994).
11    30.   Haas maintained a schedule of the rates that applied
12 when the shipper declared a higher value stated on the bill of
13 lading.  Such rates were provided "on request of the shipper"
14 as required by the Carmack Amendment.  49 U.S.C.
15 § 14706(c)(1)(B).  Even though Omneon never requested those
16 rates prior to August 2005, it was on notice of those rates
17 when it received the "Dear Valued Customer" letter.  Omneon and
18 PPI's failure to request information regarding the higher rate
19 suggests they were not interested in paying the excess
20 valuation shipment charges.
21    31.   I find that Haas gave Omneon a reasonable opportunity
22 to choose any level of liability it wished, including full

---

[3] OneBeacon's contention that Haas should have put the amount of the extra charge on the face of the bill of lading is neither required by law nor commercially reasonable.  Haas' bill of lading is a preprinted form that its customers fill out.  Haas is not required to list its excess valuation charges on the bill by 49 U.S.C. § 14706(c)(1)(B) or the law of this circuit.  Doing so would result in Haas having to reprint and redistribute the bill of lading form every time its valuation charge changed, and could create confusion if customers continued to use an old form.

10

1 value; that Omneon agreed to limited liability when it executed
2 the bill of lading and conclude that Haas successfully limited
3 it liability under the Carmack Amendment.
4     For the foregoing reasons, judgment shall be entered for
5 defendant.
6 Dated: July 11, 2008

                            _____
                                    Bernard Zimmerman
                            United States Magistrate Judge

G:\BZALL\-BZCASES\ONE BEACON\FINDINGS OF FACT.FINAL VERSION.wpd